**James A. MEZA, Plaintiff,**

v.

**Richard LEE; UNR Police Department, University of Nevada Reno, University of Nevada System; State of Nevada; Reno Police Department, City of Reno; Nevada Highway Patrol, Department of Motor Vehicles and Public Safety, State of Nevada; and Does I through X, Defendants.**

**No. CV–N–87–177–ECR.**

United States District Court, D. Nevada.

Aug. 27, 1987.

Jonathan H. King, Reno, Nev., for plaintiff.

No appearance entered on behalf of defendant Richard Lee.

Donald Klasic, General Counsel, Reno, Nev., for defendants University of Nevada Reno and UNR Police Dept.

Robert McQuaid, Jr., Reno, Nev., for defendants City of Reno and Reno Police Dept.

Patricia A. Lynch, Deputy Atty. Gen., Dept. of Motor Vehicles, Carson City, Nev., for defendants Dept. of Motor Vehicles and Nevada Highway Patrol.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

The plaintiff has filed this action seeking damages for alleged violations of his civil rights which he contends occurred at the

hands of the defendants. All of the defendants, with the exception of Richard Lee, have filed motions to dismiss the complaint for failure to state a claim for which relief can be granted. After review of the relevant authorities and the complaint filed herein, it appears to the Court that the defendants' motions must be granted.

FACTS

The plaintiff is a male Hispanic who was arrested by officers of the UNR Police Department in the immediate vicinity of the University of Nevada-Reno on July 27, 1986. This arrest was based upon the patently false report of Officer Lee. Lee had reported that Hispanic males had shot him in the leg while he was patrolling the University grounds. In fact, Lee had apparently shot himself, and then had fabricated the rest of his story. Because of this report, the UNR police and other local law enforcement authorities named herein stopped the plaintiff's car. He was forced out of the car at gunpoint, and ordered to lie down on the pavement. He was then arrested, handcuffed and returned to UNR police headquarters. Subsequent to the arrest, the plaintiff was released. It is not clear whether any formal charges were ever tendered against him.

The plaintiff alleges that the actions of the defendants have violated his rights under various articles of the Bill of Rights, and seeks to redress those by means of actions under 42 U.S.C. §§ 1983, 1985, and 1986. In addition, the plaintiff seeks damages for various state law causes of action, and asks this Court to assert pendent jurisdiction over them. The plaintiff seeks general, special, and punitive damages in the amount of $50,000 per defendant, per cause of action, and also requests the Court to issue a declaratory judgment establishing that the defendants' actions violated the plaintiff's civil rights.

CITY OF RENO/RENO POLICE DEPARTMENT

■■ The City of Reno and the Reno Police Department have moved to dismiss the complaint on various grounds. First, these defendants contend that there are no allegations of their personal involvement in the alleged constitutional violations sustained by the plaintiff. Because their personal involvement is lacking, these defendants argue that the § 1983 claim against them must be dismissed.

It is axiomatic that liability under § 1983 must be premised upon some action or inaction of the defendant. *Respondeat superior* liability does not exist under the Civil Rights Statutes. *Polk County v. Dodson*, 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). It is not the actions of the municipality's employees which must be considered in determining municipal liability under § 1983, therefore. It is the actions of the city itself which are relevant. Unless there is some allegation that the city did something or failed to do something (such as failure to train adequately), no liability may be imposed.

Review of the complaint in this case yields no such allegation. Nowhere does the complaint state that the City of Reno and the Reno Police adopted the express policies which caused the plaintiff's constitutional violations. Nowhere can one find any reference that these defendants failed to train and supervise their employees adequately. The plaintiff simply alleges that a Reno Police officer was present at his arrest and assisted in the alleged violations. As the *Monell* cases make clear, this is not sufficient to state a cause of action against the City or the Police Department. For failure to allege the actual personal involvement of the Reno defendants, dismissal of the § 1983 counts against them is proper.

The plaintiff protests this action, contending that there are allegations of personal involvement on the part of the Reno defendants. The sections to which the plaintiff refers the Court does allege the involvement of Reno Police officers. As stated above, however, such an allegation is insufficient to support a § 1983 action against the City. There must be some indication of what the city itself did which caused the violation in order for the action

to survive. *See Polk County, supra,* pg. 326 and *Monell, supra* pg. 326.

Plaintiff further contends, however, that the complaint must be allowed to stand, in that the facts of the case have not been developed sufficiently in order to allow the plaintiff to plead them properly. In view of the insubstantial record, the plaintiff argues against dismissal. This is not a reason to deny a motion to dismiss for legal insufficiency. The plaintiff could have alleged facts sufficient to survive a 12(b)(6) motion on information and belief, subject to later proof. That the plaintiff does not now have sufficient factual data to allege properly the elements of a § 1983 claim is no defense to a 12(b)(6) motion. The law is quite clear that each defendant must be personally involved in order for a § 1983 action to lie. In the absence of such an allegation, this claim will be dismissed against the Reno defendants.

The Reno defendants also contend that the § 1985 counts must be dismissed, in that there is no allegation of a racial or otherwise class based, discriminatory animus in the actions of the defendants. Further, they contend that the plaintiff has failed to allege the existence of a conspiracy to deny the plaintiff equal protection of the laws. On these grounds, they contend that the § 1985 claims are insufficient.

It is not clear from the face of the complaint under which subsection of § 1985 the plaintiff intends to proceed. It appears to the Court, however, that the plaintiff could only possibly proceed under § 1985(3). § 1985(1) concerns itself only with interference with officials of the Federal Government. Similarly, § 1985(2) is concerned only with conspiracies to prevent parties, witnesses, or jurors from attending or testifying in courts of the United States. § 1985(3) is thus the only possible statute under which the present facts could possibly state a cause of action.

Even under this statute, however, the plaintiff has failed to allege the proper facts necessary for the action to lie. Under § 1985(3), the plaintiff must allege that the defendants conspired to deprive the plaintiff of equal protection of the laws. *Brow-*

*er v. Inyo County,* 817 F.2d 540, 545 (9th Cir.1987). In addition, the complaint must state that this conspiracy was motivated by a racial or otherwise class based discriminatory animus. *Id., see also Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971).

This complaint fails on both grounds. Initially, there is no allegation in the complaint that any of the defendants engaged in a conspiracy to deny the plaintiff of equal protection of the laws. There is no allegation of an agreement, no listing of overt acts in furtherance of the conspiracy. The § 1985(3) claim fails on this basis alone. *See Brower, supra.*

In addition, there is no allegation of a racial or otherwise class based, discriminatory animus which motivated the defendants. The complaint does allege that the plaintiff's arrest occurred because of his race. This allegation alone is not sufficient. Many arrests are made each day upon considerations of race. Good police work requires that officers take a subject's racial identity into account when determining whether probable cause to arrest exists. Only where the police are motivated by a racially discriminatory animus will an action exist under § 1985(3). This requires more than the simple fact that plaintiff's arrest was partly due to the fact that his race matched that of the alleged suspect. Because such an allegation is lacking here, the Reno defendants' motion to dismiss the § 1985(3) claims must also be granted. In addition, because § 1986 claims require the existence of a valid § 1985(3) claim, the plaintiff's § 1986 claim must be dismissed as well. *Mollnow v. Carlton,* 716 F.2d 627, 632 (9th Cir.1983).

UNIVERSITY OF NEVADA SYSTEM/UNR POLICE DEPARTMENT

■ The University of Nevada and the UNR police department move to dismiss the complaint on the basis that they are arms of the state government. As such, they contend that they are immune under the eleventh amendment from suits for money damages in the federal courts. The plaintiff, on the other hand, contends that the eleventh amendment does not shield

the states from civil rights suits in the federal courts. The plaintiff further argues that *Garcia v. San Antonio Metropolitan Transit,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), has abrogated the bar against suits against states in federal courts.

This Court has already found that the eleventh amendment does bar suits for money damages by private citizens against the University of Nevada. In *Johnson v. University of Nevada,* 596 F.Supp. 175 (D.Nev.1984), the plaintiffs had filed actions under §§ 1981, 1983, 1985, 1986 and 1988, seeking money damages for injuries allegedly received at the hands of the University of Nevada Reno, the Board of Regents, and the Lawlor Events Center. All of the defendants sought to interpose the eleventh amendment as a shield from liability.

The Court found in that case that the amendment did bar such suits against the University and its Board. "The most 'crucial question' " in determining whether an entity is entitled to the protections of the eleventh amendment " 'is whether the named defendant has such independent status that a judgment against the defendant would not [have an] impact [upon] the state treasury.' " *Id.,* at 177 (*quoting Ronwin v. Shapiro,* 657 F.2d 1071, 1073 (9th Cir. 1981)). The Court thus reasoned that if the damages award would be paid out of state funds, the state is the real party in interest even though other entities might be named as nominal defendants. *Id.,* (*citing Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974)).

In this case, the Court found that damage awards against both the University and its Board would necessarily be paid out of state funds. The University and the Board were both established by the Nevada Constitution. *Id., see also* Nev. Const.Art. 11 § 4. All funding for the University and the Board come from the state's general fund. *Id., see also* Nev. Const.Art. 11 § 6. Thus, all damages for which the University and the Board could be held accountable in federal court would also be paid out of the general state treasury. In view of this, the

Court held that the University and its Board of Regents must be entitled to the protections of the eleventh amendment, and could not be held accountable for money damages in the federal courts. *Id.*

Based upon the *Johnson* case, the University of Nevada System is entitled to the eleventh amendment shield in this case. It appears that the same protections must be afforded to the UNR Police Department as well. The UNR Police Department is part of the University, inasmuch as it was created by the Board of Regents according to legislative entitlement. NRS § 396.325(1) provides that "[t]he Board of Regents is authorized to create a police department for the University of Nevada System and appoint one or more persons to be members of such department." It is clear, therefore, that the UNR Police Department is a part of the University of Nevada System, and is thus entitled to the same eleventh amendment protections as the University itself.

## NEVADA HIGHWAY PATROL/DEPARTMENT OF MOTOR VEHICLES

The Department of Motor Vehicles and the Nevada Highway Patrol also move the Court for dismissal based upon the eleventh amendment. There is no doubt that both of these entities are arms of the State of Nevada. The Department of Motor Vehicles was created by the state legislature as a department of the state in 1930. NRS § 481.019. The Nevada Highway Patrol was created as a subsection of the Department of Motor Vehicles in 1934. NRS § 481.019. Both agencies are funded out of the state treasury, the primary source of their funds being the state highway fund. NRS § 481.083. Based upon the Court's discussion of the *Johnson* case, *supra,* pg. 328, both of these entities are entitled to the protections of the eleventh amendment.

## § 1983 CLAIMS

The plaintiff contends, however, that Congress has abolished the eleventh amendment defense for actions under 42 U.S.C. § 1983. He therefore argues that he may pursue § 1983 claims against all State defendants. The Enabling Clause of the fourteenth amendment has been interpreted as giving Congress the power to

override the eleventh amendment in certain circumstances. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). In the *Fitzpatrick* case, for example, the Court determined that Congress had exercised this power in enacting Title VII, and that states could therefore be held liable for money damages under that statute in federal courts. *Id.*, at 457, 96 S.Ct. at 2672. In construing such abbrogations of immunity, however, the Court has consistently required the congressional intent to be very clear. *Quern v. Jordan*, 440 U.S. 332, 344, 99 S.Ct. 1139, 1146, 59 L.Ed.2d 358 (1979). Because of this, the Court has never found that the language of § 1983 evinces congressional intent to limit eleventh amendment immunity. In fact, the Court has consistently found that § 1983 does not override the eleventh amendment. *Id.*, at 345, 99 S.Ct. at 1147; *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974). The plaintiff's arguments in this regard are thus frivolous.

GARCIA

The plaintiff further protests that the Court has limited the eleventh amendment in *Garcia v. San Antonio Metropolitan Transit*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). The plaintiff's contentions in this regard are totally without merit. In *Garcia*, the Court expressly overruled the strictures established in *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976). That case had established Congress' inability to regulate the states in areas of "traditional state function" because of state powers under the tenth amendment. *Id.*, at 852, 96 S.Ct. at 2474. Because of this inability, the Court had held that the Fair Labor Standards Act was inapplicable to the state when acting as employers. *Id.*

*Garcia* directly overruled this precedent. The Court found in that case that Congress did have the power under the Commerce Clause to impose substantive regulations upon the states. 469 U.S. 528, at 547, 105 S.Ct. 1005, at 1016. Part of the reasoning for this decision was the Court's recognition that the "traditional state function" test developed in the *National League of Cities* case was completely unworkable. *Id.*, at 557, 105 S.Ct. at 1021. In addition to finding that the tenth amendment did not interpose a bar to the exercise of the Commerce power to regulate the states, therefore, the Court in *Garcia* case aside a formula which it had found to be confusing and unworkable. *Id.*

*Garcia* has no relevance in the present case. As noted above, *Garcia* concerned itself with the states' powers and immunities under the tenth amendment. Nowhere did the *Garcia* court purport to limit the protections afforded the states under the eleventh amendment. In addition, the *Garcia* case concerned itself with the effects of the Commerce Clause upon the independent of the states. Although the commerce power has sometimes been used as a justification for the enactment and enforcement of civil rights, it can hardly be said that the two concepts are interchangeable with one another. *Garcia* substantially expanded Congress' power to regulate the states under the Commerce Clause. It did not weaken the states' immunity under the eleventh amendment. Plaintiff's contentions in this regard are thus without merit.

█ Both the University of Nevada defendants and the Department of Motor Vehicles defendants are thus immune from suits for money damages in this Court. The plaintiff, however, also seeks injunctive relief from the Court against these defendants in the form of a declaratory judgment establishing their liability. The Supreme Court has recently found that declaratory judgment actions against the states are also barred by the eleventh amendment. In *Green v. Mansour*, 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985), the plaintiff brought a class action against the Director of the Michigan Department of Social Services alleging that the calculation of benefits under the state's Aid to Families with Dependent Children Program violated federal law. The plaintiff sought injunctive relief in the form of a mandatory, protective injunction, as well as a declaration that the state's past conduct was improper. During the pendency of the suit, Congress amended the statutory pro-

vision that was the basis of the plaintiffs' suit, such that there was no longer a current violation of federal law. *Id.*, 106 S.Ct. at 424. The plaintiffs continued to press forward with their action, hoping to secure a declaration of past misconduct. The lower courts held that such a declaration would violate the eleventh amendment, and dismissed the suit.

The Supreme Court agreed with the lower courts. After review of the classic cases defining the scope of the eleventh amendment, the Court conceded that there was an actual dispute in this case regarding the lawfulness of the defendants' past actions. *Id.*, at 428. Nevertheless, the Court found the eleventh amendment would unquestionably prohibit the award of money damages or restitution if that dispute were resolved in the plaintiffs' favor. *Id.* Although such a declaratory judgment would be useful to the plaintiffs in that they would merely need to return to state court to calculate damages and enforce the award under the principles of *res judicata*, the Court held that such a declaratory judgment would have the same effect as a full-fledged damages award in the federal court. The result, in the Court's opinion, would be to allow an "end run" around the eleventh amendment and the Court's line of authority established in *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *Id.* Thus, the Court concluded, where there is no claimed continuing violation of federal law, and thereby no basis for prospective injunctive relief, the eleventh amendment prohibits declaratory judgment relief against the states.

In this case, the plaintiff does not contend that there is any sort of continuing constitutional violation. He merely seeks a declaration that the conduct of the state on the night of his arrest was unconstitutional. *Green* makes it clear, however, that the states are not amenable to this type of suit in the federal courts. The existence of the request for declaratory relief, therefore, does not prevent these defendants from invoking the eleventh amendment immunity.

PENDENT STATE CLAIMS

In view of the fact that the City of Reno, the Reno Police Department, the University of Nevada System, the UNR Police Department, the Nevada Department of Motor Vehicles, and the Nevada Highway Patrol have no remaining federal claims pending against them, it is proper to dismiss all remaining pendent state claims against these defendants as well. There appears to be no statute of limitations problem for the plaintiff, inasmuch as these alleged violations occurred approximately one year ago. The statute for personal injuries of this sort is two years long in Nevada, which indicates that dismissal of these claims will not prohibit the filing of these state claims in a court with competent jurisdiction. *See* NRS § 11.190(4)(e).

IT IS, THEREFORE, HEREBY ORDERED that the motion to dismiss on behalf of the City of Reno and the Reno Police Department is GRANTED.

IT IS FURTHER ORDERED that the motion to dismiss on behalf of the University of Nevada and the UNR Police Department is GRANTED.

IT IS FURTHER ORDERED that the motion to dismiss on behalf of the Nevada Department of Motor Vehicles and the Nevada Highway Patrol is GRANTED.