UNITED STATES of America, ex rel. Edyth L. SIKKENGA, and Edyth L. Sikkenga, on her own behalf, Plaintiffs,

v.

REGENCE BLUECROSS BLUESHIELD OF UTAH, f.k.a. Blue Cross and Blue Shield of Utah; Associated Regional and University Pathologists, Inc.; John P. Mitchell; Jed H. Pitcher; Frank Brown; and Does 1–30, Defendants.

No. 2:99CV86K.

United States District Court, D. Utah, Central Division.

Aug. 17, 2004.

Eric A. Overby, U.S. Attorney's Office, David K. Isom, Matthew R. Howell, David K. Isom Law Offices, Roger H. Hoole, Hoole & King LC, Salt Lake City, UT, Daniel Day, Murray, UT, for Plaintiffs.

Randy L. Dryer, James T. Blanch, Parsons Behle & Latimer, Salt Lake City, UT, Robert K. Huffman, Miller & Chevalier Chartered, Washington, DC, Robert R. Harrison, Snow Christensen & Martineau, James S. Jardine, Paul C. Burke, Ray Quinney & Nebeker, Salt Lake City, UT, for Defendants.

## MEMORANDUM DECISION AND ORDER

KIMBALL, District Judge.

This matter is before the court on Defendant Associated Regional and University Pathologists, Inc.'s ("ARUP") motion to dismiss. Defendant ARUP argues that this court lacks subject matter jurisdiction over Plaintiff's qui tam claims based on two separate grounds. First, ARUP asserts that it is a state agency because it is wholly owned and controlled by the University of Utah and, therefore, cannot be a "person" subject to liability under the False Claims Act. Second, ARUP contends that because it is an arm of the State of Utah, it is entitled to Eleventh Amendment immunity and cannot be sued in federal court.

The court held a hearing on the motion on July 29, 2004. At the hearing, Plaintiff was represented by Matthew R. Howell and Daniel L. Day, and Defendant ARUP was represented by James S. Jardine and Paul C. Burke. After carefully considering the pleadings, memoranda, and other materials submitted by the parties and the law and facts relating to this matter, and now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Relator Edyth Sikkenga's Complaint alleges that ARUP and Defendant Regence BlueCross BlueShield of Utah ("Regence") violated the False Claims Act ("FCA") when Regence, the major Medicare Part B carrier for Utah, paid claims for laboratory testing submitted by ARUP that did not adequately document the medical necessity of the tests and were potentially improper claims under Medicare Part B. Regence employed Sikkenga in its Medicare Part B operations from June 20, 1990 until she was terminated on April 4, 1995.

On February 12, 1999, Sikkenga filed her Complaint against Regence and ARUP under seal pursuant to the qui tam provisions of the civil False Claims Act. The United States declined to intervene. At that time, the Complaint was unsealed and served on Defendants.

In November 2001, this court dismissed Sikkenga's first cause of action without prejudice.[1] The court gave Sikkenga a chance to specifically plead her allegations regarding Regence's dealings with ARUP to state whether Regence "caused" ARUP to present false claims. The court also dismissed the first cause of action without prejudice for failure to plead the claim with particularity under Federal Rule of Civil Procedure 9(b). Sikkenga's Amended Complaint re-pled the first cause of action against ARUP and the Regence Defendants. In response to the Amended Complaint, Regence filed a second motion to dismiss the First Cause of Action against it, which this court granted. ARUP answered the Amended Complaint but then filed this motion to dismiss in

---

1. All other causes of action asserted in Sikkenga's Complaint and Amended Complaint have been dismissed.

March of 2003 when it retained new counsel. Plaintiff and ARUP conducted discovery on the issue of whether ARUP is an arm of the state for approximately a year and then completed the briefing of this motion.

## DISCUSSION

In its motion to dismiss, ARUP argues that it is entitled to dismissal on two separate grounds. First, ARUP contends that it is a state entity and the FCA does not allow private individuals to sue a state entity. Second, ARUP asserts that as a state agency it is entitled to Eleventh Amendment immunity. The Supreme Court has directed that in cases involving issues of whether a party is considered a "person" under the terms of the FCA and whether the party is entitled to Eleventh Amendment immunity that the court should decide the statutory issue before the Eleventh Amendment constitutional issue. *Vermont Agency Nat'l Res. v. United States ex rel. Stevens,* 529 U.S. 765, 779–80, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). If the case can be resolved on the statutory ground, the court need not proceed to the constitutional issue. *Id.* at 780, 120 S.Ct. 1858. Therefore, the court will begin its analysis by determining whether ARUP is a "person" as that term is used in the FCA.

■ The main dispute between the parties is whether ARUP is a state entity, i.e., an arm of the state. The United States Supreme Court has ruled that the FCA does not permit a private individual to maintain a *qui tam* action against a state or its agencies. *Vermont Agency Nat'l Res. v. United States ex rel. Stevens,* 529 U.S. 765, 787–88, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000). In other words, a state and its agencies are not "persons" under the terms of the FCA when an individual brings a *qui tam* suit on behalf of the federal government. *Id.* However, such sovereign immunity does not extend to political subdivisions of the state or municipal corporations. *Cook County v. United States ex rel. Chandler,* 538 U.S. 119, 123, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003).

■ The Tenth Circuit has not specifically addressed this issue since the Supreme Court rulings in *Stevens* and *Chandler.* However, in other contexts, several cases from this district have held that the University of Utah is a state agency and that it functions as an arm of the sate. *See, e.g., Sadwick v. University of Utah,* 2001 WL 741285 (D.Utah) (Campbell, J.); *Roach v. University of Utah,* 968 F.Supp. 1446, 1450–51 (D.Utah 1997)(Campbell, J.). And, the Tenth Circuit has held that the "University of Utah Medical Center, as part of the University of Utah, is an arm of the state." *Watson v. University of Utah Med. Ctr.,* 75 F.3d 569, 574 (10th Cir.1996). Although at oral argument Sikkenga stated that the Eleventh Amendment arm-of-the-state analysis does not "inform" as to an entity's status as a "person" under the FCA, she did not provide an alternative for analyzing the issue under the FCA. Because there is no clear law in this area and the FCA cases have made a distinction between state and local governments similar to the distinction in Eleventh Amendment case law, the court finds the Eleventh Amendment case law helpful in determining whether ARUP is sufficiently tied to the University of Utah to be considered a state entity for FCA purposes. Therefore, given the guidance already available from the Tenth Circuit, the court must determine whether ARUP is similar enough in nature to the Medical Center or the University itself to be considered an arm of the state.

To evaluate eligibility for Eleventh Amendment immunity, the Tenth Circuit generally follows a two-step approach. First, the court considers whether the en-

tity at issue would be legally liable for the anticipated judgment. *Sturdevant v. Paulsen,* 218 F.3d 1160, 1165–69 (10th Cir. 2000). Second, the court determines whether the entity is an instrumentality of the state by evaluating a range of factors, including: "(1) the characterization of the governmental unit under state law; (2) the guidance and control exercised by the state over the governmental unit; (3) the degree of state funding received; and (4) the government unit's ability to issue bonds and levy taxes on its own behalf." *Id.* at 1166. Although, as stated, the court considers these factors helpful to its determination, the court does not consider any one dispositive. In addition, it is important to recognize that the Tenth Circuit has noted that

> Because of the open-ended nature of the arm-of-the-state analysis, it is easy to become caught up in the minutiae of state law, such as the extent of control over the Board by the executive and legislature, the details of the risk management funds operation, and the proportional sources of the Board's funding. These details, however, must not eclipse a fundamental distinction ... between alter egos or instrumentalities of the state on the one hand, and political subdivisions such as cities and counties on the other.

*Id.* at 1170.

In *Watson,* the plaintiff contended that the University of Utah Medical Center was "a separate and distinct entity that is 'more akin to the private hospitals with which it competes.'" 75 F.3d at 575. The Plaintiff also pointed out that less than five percent of the Medical Center's operating income came from the state and that any judgment could be satisfied from patient revenues rather than state funds. *Id.* at 575–76. Nevertheless, the Tenth Circuit determined that the Medical Center was an arm of the state because it is not autonomous from the University or the State

and the bulk of the monies to satisfy a judgment would come from the state's Risk Management Fund. *Id.* at 576–77. In determining that the Medical Center was not autonomous, the court looked at the structure of the Medical Center's relationship with the University, such as:

> The Medical Center is governed by the University Board of Trustees, and its annual budget is subject to approval by the University Board and the State Board of Regents. The Bylaws of the Medical Center, Article I, provide that the Medical Center is a "component organization" of the University of Utah. The Medical Center Board is "created by, and subject to the authority of the President of the University and the Institutional Council," and members are "appointed by the president of the University with approval by the Institutional Council." Finally, the University president and Institutional Council retain authority to grant final approval for the long range plan of the Medical Center, the annual budget and appropriations request, major construction, capital financing, fund raising programs, and University policies, procedures, rules, and regulations "relating to or affecting" the Medical Center. Further, the Chief Operating Officer of the Medical Center reports directly to the University Vice President for Health Sciences.

*Id.* at 576 (citations omitted). Based on these fact, the court determined that the Medical Center was clearly not autonomous. Therefore, in addition to the fact that monies from the state's Risk Management Fund would be used to satisfy any judgment, the court found the Medical Center an arm of the state. *Id.* at 576–77.

■ In this case, the facts regarding ARUP's relationship to the University of Utah do not appear to be in dispute. Rather, it is the legal import to assign

certain facts that is in dispute. The parties' dispute as to whether ARUP is an arm of the state focuses on ARUP's corporate status. Sikkenga argues that because the University decided to incorporate ARUP, it is a separate and distinct legal entity. ARUP argues that the University had statutory authority to organize its component parts in a corporate form and its Articles of Incorporation demonstrate that it is a state entity.

The University of Utah formed ARUP in 1983 as an extension of the Department of Pathology and using funds from the Department of Pathology. ARUP is, and always has been, a wholly-owned corporation of the University of Utah. It functions as a component of the University of Utah Health Sciences Center. ARUP's Articles of Incorporation state that its purpose is, *inter alia*, "[t]o engage in and conduct the business of a general clinical and surgical pathology laboratory as deemed necessary by the Department of Pathology to support, supplement, and enhance its educational mission," and "to engage in related scientific and medical research and teaching as deemed necessary by the Department of Pathology to support its research mission." Furthermore, ARUP's purpose is

(1) to improve the quality of services given by the University Hospital to the indigent sick; (2) to render such services as may be required by the University Hospital for all patients, the indigent as well as the paying; (3) to increase the teaching facilities of the Department of Pathology, to upgrade the quality of the teaching staff and to engage visiting scientists in order to train more qualified doctors; (4) to support and engage in scientific research (both theoretical and applied) deemed necessary by the Department of Pathology, and to disseminate scientific knowledge through the preparation of papers, pamphlets, books, and

the delivery of qualified staff members of scientific lectures and communications anywhere; (5) to receive and maintain a fund or funds of real or personal property, or both subject to the restrictions and limitations hereinafter set forth, to use and apply the whole of the receipts exclusively for the above enumerated charitable, educational, or scientific purposes consistent with the educational mission of the Department of Pathology.

As with the Medical Center, ARUP is part of the University Health Sciences Center. Although the University affords ARUP maximum flexibility and independence in its operations, it is subject to strategic oversight by the President of the University. Similar to the Medical Center, ARUP is subject to the authority and direct supervision of the President of the University. ARUP's Chairperson/Chief Executive Officer reports directly to the President of the University. The Chairperson/CEO of ARUP is appointed by its Board, subject to the approval of the President of the University. ARUP's directors are chosen by the University's President and they report to the President and Board of Regents. Under state law, the State Board of Regents is vested with the power to control, supervise, and manage the University of Utah and its assets, including any "affiliated institution ... owned, operated, or controlled by the governing board of the university or college." Utah Code Ann. § 53B–3–102, § 53B–20–101. Therefore, the State Board of Regents has the power to control, supervise and manage ARUP.

ARUP is also similar to the Medical Center in that it raises most of its own funding. As the *Watson* court acknowledged, this fact creates difficulty in applying the arm-of-the-state analysis. Although ARUP admits that any potential

legal liability would only indirectly affect the University, it asserts that this is not dispositive because the Tenth Circuit has recognized immunity when no direct liability of the state had been established. In *Watson*, the Tenth Circuit granted immunity to the University of Utah and its medical center even after noting that a potential judgment would apparently not have been paid directly from the state treasury. 75 F.3d at 576–77. The Tenth Circuit also found the issue of legal liability nondispositive in *Sturdevant* where it concluded that the other factors decisively resolved the question in favor of immunity. 218 F.3d at 1166.

In this case, Sikkenga contends that ARUP's assets and liabilities do not belong to the University or State-they belong to the separate legal entity that is ARUP. However, all of ARUP's property is vested with the State of Utah through the University and the Board of Regents under Utah Code Annotated Section 53B–20–101. In addition, ARUP's finances are directly tied to the University and, under its Articles of Incorporation, all of ARUP's revenues go "exclusively to support the charitable, educational, or scientific purposes consistent with the educational mission of the Department of Pathology." The Internal Revenue Service has granted ARUP tax exempt status because it operates within the University Health Sciences Center to provide essential government functions and the income of ARUP accrues to the State.

Furthermore, ARUP's financial records are blended with that of the University in the University's annual reports. ARUP's financial statements have not been directly audited by the State Auditor, but they are prepared by independent auditors and then submitted to the State Auditor. The University Medical Center's finances have also been handled this way by the University and State. During ARUP's history, money has flowed in both directions between the University and ARUP. Any loss by ARUP would reduce the total funds available to the University and would likely cause the University to infuse funds into ARUP.

Given the Tenth Circuit's conclusion that immunity attaches to the University Medical Center, it stands to reason that the same immunity covers the various component parts of the University Health Sciences Center, including ARUP. As in the *Watson* case, it appears clear that ARUP is under the control of the University. Similarly, in *Pharmaceutical Services*, this court found that the University's immunity was shared by its Department of Radiology as well as by Intermountain Radiopharmacy, a University-owned venture that manufactured and sold radiopharmaceuticals. 801 F.Supp. at 509–10, 512–13.

The University's Health Sciences Center is state-assisted but requires a large degree of self-support from its sub-units, including the Medical Center, pharmacy program, and ARUP. The University of Utah, which has immediate control over ARUP's accounts, would suffer the direct repercussions of any such loss. As recognized in *Pharmaceutical Services*, "it is a fiction to suggest that a judgment will not ultimately be made up through state appropriations. Any use of non-state funds to satisfy a judgment inevitably will necessitate increased state outlays." 801 F.Supp. at 511.

■ Nevertheless, Sikkenga argues that unlike the other entities discussed in prior case law, ARUP is a corporation and, as such, is not entitled to arm-of-the-state status. The Eleventh Amendment cases focus on whether an entity is an arm of the state or a political subdivision or municipal corporation. However, Sikkenga's arguments with respect to corporate status focus on whether ARUP is a state entity or a private corporation. To the extent Sik-

kenga's arguments are directed at whether ARUP's corporate status make it more akin to a municipal corporation, there are significant differences between ARUP's status and that of a municipal corporation. Most obviously, ARUP cannot issue bonds or levy taxes. Sikkenga argues, similar to the argument advanced by the plaintiff and rejected by the court in *Watson,* that ARUP could generate its own additional revenues. However, that argument ignores the fact that all of ARUP's revenue and income accrues to the state.

Sikkenga contends that the University chose to insulate itself from ARUP's financial liabilities by taking advantage of the corporate shield provided for under Utah's corporation laws. Sikkenga relies on case law stating that, under Utah law, "a corporation is regarded as a separate and distinct legal entity from its stockholders.' ... This is true whether the corporation has many stockholders or only one." *Colman v. Colman,* 743 P.2d 782, 786 (Utah App.1987) (citation omitted). ARUP does not dispute that it is a separate legal entity because of its corporate status. However, ARUP argues that Sikkenga's contention that it should be considered a person under the FCA because it is a corporation fails because corporate organization is not inherently incompatible with state agency status.

It was not stated in *Watson* whether the University Medical Center was incorporated. However, the University itself is a "body politic and corporate" under state law and courts have held that it is an arm of the state. In addition, at least two courts have dismissed FCA claims where universities have been organized and operated in corporate form. The Ninth Circuit recently affirmed that the University of California, which is organized as a corporation through which it manages a hospital system, is immune from FCA claims filed by private relators because the university is ultimately a state entity. *Donald v. University of Cal. Bd. of Regents,* 329 F.3d 1040 (5th Cir.2003)(private relators could not make any recovery from *qui tam* action alleging fraudulent billing practices by university teaching hospitals).

Also, in *United States ex rel. Adrian v. Regents of the Univ. of California,* 363 F.3d 398 (5th Cir.2004), the Fifth Circuit affirmed the dismissal of an FCA claim against a university laboratory managed by the University of California. The relator in *Adrian* contended, as Sikkenga does in this case, that a corporation that can sue and be sued should, therefore, be considered a person under the FCA. The court disagreed, holding that "the Livermore Lab is plainly a 'state or state agency.'" *Id.* The *Adrian* court explained that a state university system could not be subjected to FCA exposure based on its establishment as a corporation and the fact that the Regents operate as a corporation does not "alter the status of the Regents as a creation of, and arm of, the state." *Id.* The court also rejected the relator's reliance on *Chandler,* 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003), and refused to extend FCA liability to encompass the state university and its laboratory even though the state university was a corporation. 363 F.3d at 401. The court also rejected the relator's argument that the laboratory "ceases to act as an arm of the state because Livermore [laboratory] competes against private companies in a commercial arena instead of performing the functions of a state agency." *Id.*

The arguments the Fifth Circuit rejected in *Adrian* are similar to those raised by Sikkenga in this action. In this case, the University of Utah is a body politic and corporate under Utah law, whereas ARUP was incorporated by the University in accordance with its statutory powers under Utah law. Just as the Fifth Circuit found

in *Adrian*, the University and ARUP did not forfeit their status as state agencies by virtue of their corporate organization. ARUP's corporate structure does not alter its organizational relationship with the University or the University's oversight in any significant way. Its Articles of Incorporation also demonstrate that it is wholly-owned by the University, all of its revenues accrue to the state, and all of its property belongs to the state.

 Sikkenga further raises several arguments to support her contention that ARUP has not acted consistent with its status as an arm of the state. Although some of these facts, such as having a private attorney as an agent for service of process, do indeed appear to be inconsistent with being an arm of the state, the court is not persuaded that any of these assertions are relevant to the analysis of whether ARUP is a state entity. As with all sub-units of the University, the University provides legal representation for ARUP through its office of general counsel. The fact that ARUP has a private attorney as its agent for service of process is not determinative of its status as a state entity. Sikkenga also asserts that ARUP has never asserted an Eleventh Amendment immunity defense in other cases and waited over two years to assert it in this case. However, this court is not aware of any case law stating that a party could waive its status or immunity merely by failing to raise it. Furthermore, Sikkenga asserts that ARUP does not use exempt license plates on its vehicles. As stated in *Sturdevant*, "it is easy to become caught up in the minutiae," but these details "must not eclipse" the distinction between instrumentalities of the state on one hand and political subdivisions on the other. 218 F.2d at 1170.

This case presents a difficult question with many competing facts. However, on balance, even if a potential judgment might not come directly from the state treasury, the court concludes that ARUP is sufficiently tied to the University of Utah to be considered an arm of the state. Therefore, as a state entity, ARUP is not a "person" under the FCA. Accordingly, Plaintiff's *qui tam* cause of action against ARUP is dismissed.

## CONCLUSION

Based on the above reasoning, ARUP's motion to dismiss is GRANTED. Accordingly, ARUP is dismissed from this action. The court has now dismissed all of Plaintiff's causes of action against all of the defendants. However, there is a pending motion to reconsider the court's ruling on Sikkenga's claims against the Regence defendants, that will be ruled on in due course.