128 P.3d 1057 (2006)
Lane SIMONIAN, Appellant,
v.
The UNIVERSITY AND COMMUNITY COLLEGE SYSTEM OF NEVADA, Respondent.
No. 39292.
Supreme Court of Nevada.
February 23, 2006.
*1058 Lane Simonian, Reno, in Proper Person.
Mary Phelps Dugan, Associate General Counsel, Reno, for Respondent.
Before ROSE, C.J., DOUGLAS and PARRAGUIRRE, JJ.

OPINION
PER CURIAM.
In this proper person appeal, we determine whether the district court properly granted summary judgment to the University and Community College System of Nevada (UCCSN) because, as a state entity, UCCSN is not subject to liability under Nevada's False Claims Act (FCA).[1] We also consider whether sanctions may be imposed on a complainant for having filed an FCA action based on allegations that, in the context of an administrative retaliation proceeding, were previously found meritless.
We agree with the district court that UCCSN is a state entity and therefore not subject to FCA liability. Accordingly, we affirm the district court's summary judgment. We further conclude, however, that the district court's award of attorney fees as a sanction for having asserted a meritless claim is unsupportable under the circumstances. Thus, we reverse the portion of the order awarding UCCSN attorney fees.

FACTS
Appellant Lane Simonian was a part-time instructor for Truckee Meadows Community College for several years. As a result of concerns that surfaced during his employment, Simonian instituted proceedings against respondent UCCSN on four notable occasions.
First, in 1999, Simonian filed a district court petition for extraordinary relief, challenging UCCSN's alleged refusal to pay part-time instructors the entire salary amounts for which legislative appropriations had been made. Within a few months of petitioning the court and before any response had been filed, however, Simonian voluntarily dismissed the petition.
Second, that same year, Simonian requested a hearing with the Nevada Department of Personnel under NRS 281.641, which governs reprisals and retaliatory actions taken against state officer or employee whistleblowers.[2] In his request, Simonian asserted that he had sent letters to certain individuals and agencies, alleging that UCCSN had misappropriated state funds by submitting incorrect part-time instructor salaries in budget requests to the Legislature. Consequently, Simonian claimed, the community college retaliated against him by refusing to renew his teaching contract. After reviewing the matter, a hearing officer found that Simonian had not proven his retaliation claim, in part because Simonian had not demonstrated success on the merits of his underlying misappropriation allegations, and without so doing, he could not succeed on a claim for retaliation.
Third, the following year, Simonian filed a second NRS 281.641 request, this time alleging that he had been retaliated against when he was dismissed as a part-time lecturer earlier that year. Simonian claimed that the dismissal resulted from his public complaints *1059 about "the false reporting of average new full-time instructors' salaries." The request was dismissed as untimely.
Finally, in 2001, Simonian instituted a false claims action against UCCSN. As a basis for relief, Simonian asserted that between 1987 and 2001, UCCSN had "presented to the Nevada State Legislature claims for $16 million in unpaid salaries for part-time instructors." He requested that UCCSN be assessed treble damages, a civil penalty payable to the State, and $5,000 for his expenses, plus costs. The Attorney General, although statutorily permitted to intervene in the action, declined to do so.
The district court granted UCCSN's ensuing motion to dismiss, treating it as a motion for summary judgment, and UCCSN's request for attorney fees as sanctions under NRCP 11 and NRS 357.180(2). Specifically, the district court determined that Simonian had failed to state an FCA claim because a legislative budget request does not fall within the FCA's definition of "claim" and because UCCSN is not a "person" for purposes of FCA liability. In addition, the district court summarily determined that Simonian's claim was barred by the doctrine of collateral estoppel. Finally, the district court noted that Simonian had previously brought actions against UCCSN on the issue of part-time UCCSN instructor salaries and awarded UCCSN $2,452.50 in attorney fees, as sanctions against Simonian for presenting "a claim ... not well-grounded in fact or in existing law." Simonian appeals from the district court's order.

DISCUSSION
This court reviews orders granting summary judgment de novo.[3] Summary judgment is appropriate when, after an examination of the record viewed in a light most favorable to the nonmoving party, no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law.[4]
As, legally, state entities are not subject to FCA liability and no material factual disputes exist as to UCCSN's state entity status, we conclude that the district court properly granted summary judgment on that basis. Consequently, we do not reach Simonian's arguments regarding the district court's alternative bases for summary judgment, that an entity's budget request does not constitute a "claim" for FCA purposes and that the action was barred under the collateral estoppel doctrine.

State entities are not "persons" subject to FCA liability
Nevada's FCA permits the Attorney General, or a private "qui tam" plaintiff acting on his own behalf and on that of the State, to maintain an action for treble damages against "a person" who, among other things, presents a false claim for payment or approval, uses a false record or statement to obtain payment or approval of a false claim, or is the beneficiary of and fails to disclose after discovery of, an inadvertent submission of a false claim.[5] The FCA defines "claim" as "a request or demand for money, property or services made to ... [a]n officer, employee or agent of this state ... or ... [a] contractor, grantee or other recipient of money from the State ... if any part of the money ... was provided by the State."[6]
Although the FCA does not likewise define the term "person," a long-standing principle of statutory construction instructs that "`person' does not include the sovereign."[7] While we have previously only *1060 had occasion to apply this principle in the context of statutory civil rights law, it applies equally to any statute.[8] Thus, unless a statute expressly indicates otherwise, we will presume that the statute does not confer "person" status on a state entity.[9] Here, the FCA contains no express language specifying that the term "person" includes state entities, and therefore we presume that the Legislature did not intend to subject the State to FCA liability.
While we acknowledge that this presumption is "not a `hard and fast rule of exclusion,'"[10] we conclude that the FCA's policy to recover state funds further supports the presumption's use here. It would simply make no sense to interpret the FCA to allow the Attorney General or a private plaintiff, acting on the State's behalf, to sue a state entity to recover state funds; a successful action would not actually "recover" funds for the State, but would rather merely require the State to reallocate resources between state entities while expending funds for litigation costs and amounts awarded to a private plaintiff under the FCA.[11]
Moreover, this court has recognized that Nevada's FCA is modeled after the federal FCA,[12] which the United States Supreme Court has interpreted as excluding states and state entities, but not local governments, from the definition of "person."[13] Although the Supreme Court's reasoning is not entirely relevant in the context of Nevada's FCA,[14] it does define language in the act upon which Nevada's FCA is expressly modeled, and thus we may look to it for guidance.[15]
Part of the Supreme Court's reasoning observes that the original federal FCA contained no express provision to overcome the presumption that states are not "persons" for purposes of qui tam liability, even though a separate federal FCA provision granting the Attorney General permission to instigate civil investigations with "any person" specifically defined "person" in that context to include states.[16] Because Congress had expressly defined "person" to include states in the investigative context, but not elsewhere in the FCA, the Supreme Court reasoned that the absence of a similar definition with respect to the liability provision revealed that the liability provision was not intended to include *1061 states.[17] Further, that Court noted that, despite subsequently making various changes to the liability provision, Congress never expanded the meaning of "person" to include states.[18]
Correspondingly, because in drafting Nevada's FCA the Nevada Legislature looked to the federal FCA, the Legislature necessarily examined the federal act's definitions. Having thus considered the federal FCA's definition of "person" that expressly included state entities in the investigative context, the Legislature nevertheless chose not to similarly define "person" in the Nevada FCA's liability provision. Consequently, we see no reason to depart from the presumption that state entities are not "persons" under Nevada's FCA; therefore, state entities are not subject to FCA liability.[19]

UCCSN is a state entity
UCCSN is comprised of the system of universities, colleges, administrative services, research facilities, and departments within the public service division, and it is administered by the Board of Regents[20]the group of persons constitutionally authorized to control and manage the state university system.[21] At least to the extent that other funds are inadequate, the Legislature must "provide for [the] support and maintenance" of the system.[22] To obtain maintenance and support from the state, UCCSN must apply for "direct legislative appropriation from the general fund, upon the presentation of budgets in the manner required by law."[23] The Board of Regents must biennially present a four-year plan to the Legislature,[24] and the Governor must be supplied with minutes of the Board's meetings.[25] The Board members function as trustees over the system's funds[26] but are subject to specific rules governing university securities.[27]
Based on the decisional law of this state and other jurisdictions, UCCSN is a state entity. In Northern Nevada Association of *1062 Injured Workers v. SIIS,[28] this court concluded that the former State Industrial Insurance System was a state agency because it (1) was "subject to the approval and control of the Governor, the legislature, and other agencies of the government"; (2) was "treated as the State or a state agency throughout the Nevada Revised Statutes"; and (3) possessed certain sovereign powers.[29] Similarly, UCCSN is: (1) subject to the approval and control of the state government;[30] (2) at least in some limited fashion, treated as a state entity within the Nevada Revised Statutes;[31] and (3) through its Board, in possession of some sovereign powers.[32]
Moreover, although we have not previously examined UCCSN's state entity status, federal district courts in Nevada have concluded that UCCSN, UNR, and the Board of Regents are "state instrumentalities" for Eleventh Amendment purposes.[33] Other courts have also concluded that state universities are part of the state government under the Eleventh Amendment.[34] Because the analysis for determining an entity's status for Eleventh Amendment purposes is similar to the distinctions made for FCA purposes i.e., state entities are entitled to immunity while local governments are notdeterminations made for Eleventh Amendment purposes are germane to determinations in FCA cases.[35] Thus, these determinations strongly support the view that UCCSN has state entity status for FCA liability purposes.
For the foregoing reasons, we conclude that UCCSN is a state entity. Since state entities are not "persons" subject to FCA liability, the district court properly determined that UCCSN was entitled to judgment as a matter of law on Simonian's FCA claim.

*1063 Sanctions

In addition to granting summary judgment, however, the district court also determined that Simonian's "claim [was] not well-grounded in fact or in existing law." Consequently, the court sanctioned Simonian, awarding $2,452.50 in attorney fees to UCCSN under NRCP 11(c) and NRS 357.180(2), which allow a party to be awarded attorney fees for defending an action brought on baseless grounds or for improper purposes. In so doing, the court noted that Simonian had instituted four proceedings against UCCSN regarding its part-time instructors' salaries, none of which was successfully prosecuted. The court made no other findings.
Both NRCP 11 and NRS 357.180 sanctions are reviewed under an abuse of discretion standard.[36] In 2002, NRCP 11 sanctions, including attorney fees, could be imposed on a litigant for filing a pleading that was not "well-grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law."[37] Under NRS 357.180(2), the court may award a prevailing defendant reasonable expenses and attorney fees "if it finds that the action was clearly frivolous or vexatious or brought solely for harassment." Although the district court concluded that Simonian's claim was "not well-grounded in fact or in existing law," it used none of the above NRS 357.180(2) descriptions. Apparently, however, the court determined that Simonian's false claims action was "clearly frivolous," since a frivolous action has been defined as one that is "baseless," and "baseless" means that "the pleading is [not] well grounded in fact [or is not] warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."[38]
As noted above, the FCA does not expressly state that a plaintiff may not sue the State or may not bring claims based on legislative budget requests. And no prior Nevada decisional law so interpreted the FCA. Thus, it cannot be said that Simonian's false claims action was clearly frivolous.
According to UCCSN, the false claims action was not well-grounded in fact or law because Simonian had repeatedly asserted the same claim, under different names, and those proceedings were "either dismissed or... lost on the merits." UCCSN asserts that the district court could have reasonably concluded that Simonian's intent in reasserting this matter, pursuant to an obviously nonapplicable statute, was to harass UCCSN.
The district court, however, made no findings of harassment. Moreover, Simonian's writ petition was voluntarily dismissed, apparently before UCCSN responded or the petition's merits were addressed. The second and third "claims" arose from allegations of retaliation by the community college, not of UCCSN misappropriation, the latter of which was also dismissed before its merits were reached. Thus, the merits of Simonian's salary concerns were addressed only in his 1999 administrative retaliation proceeding against the community college. As a result, unless the 1999 hearing officer's decision is sufficient to show that Simonian's FCA claim was not well-grounded in fact and law, there exists no basis for the district court's award of attorney fees.[39]

*1064 The 1999 administrative decision

Because the hearing officer was not required to determine the merits of Simonian's misappropriation allegations in the 1999 retaliation proceeding, and because those allegations were not purported to have arisen under the FCA, the administrative decision on Simonian's retaliation hearing request may not be used to show that Simonian's FCA claim was unfounded in fact or law.
As previously mentioned, Simonian's 1999 retaliation claim was brought under a whistleblower protection statute, NRS 281.641. The declared public policy of NRS Chapter 281's disclosure provisions is to encourage state and local officers and employees "to disclose, to the extent not expressly prohibited by law, improper governmental action, and it is the intent of the Legislature to protect the rights of [the person] who makes such a disclosure."[40] Thus, NRS 281.641(1) allows a state officer or employee who believes that he or she has experienced retaliation for having disclosed information concerning improper governmental action to apply to a hearing officer for a determination of the retaliation allegations.[41] The hearing officer must determine whether "the action taken was a reprisal or retaliatory action, [and] may issue an order directing the proper person to desist and refrain from engaging in such action."[42]
Nowhere in NRS Chapter 281 does it specifically authorize hearing officers to independently determine whether the government has actually undertaken "improper governmental action" or to remedy such conduct. Instead, NRS 281.641(1) merely ensures that a state employee "who discloses information concerning improper governmental action" is protected against retaliatory action incurred as a result of disclosing that information. Since the statute does not state whether "proof" of improper governmental action is required, it is ambiguous as to that issue, and we must look to reason and public policy to determine what the Legislature intended.[43]
By enacting NRS 281.641, the Legislature aimed to encourage persons to come forward with information of employer wrongdoing by affording them protection against retaliatory action by their employer.[44] That purpose could be thwarted if a person is only protected if his or her allegations are proven correct. And because NRS 281.651 provides that a state officer or employee may not use the disclosure provisions to harass, explaining that those provisions "do not prohibit a [person] from initiating proper disciplinary procedures against [a state or local officer or employee] ... who discloses untruthful information concerning improper governmental action," the Legislature has separately addressed any improper conduct on the employee's part.
Thus, with respect to an NRS 281.641(1) reprisal/retaliation claim, the hearing officer must only determine whether a state employee has engaged in protected activity, i.e., has disclosed information concerning alleged conduct that might constitute "improper governmental action."[45] As a result, the hearing *1065 officer's determination regarding whether Simonian's allegations proved correct was unauthorized.
Further, Simonian's FCA allegations pertain to false claims as defined under NRS Chapter 357, not to "improper governmental action," as defined at NRS 281.611(1). While the two categories might overlap, they do not always necessarily do so. Thus, any finding that UCCSN's conduct did not constitute "improper governmental action" does not support the conclusion that Simonian's false claims action was therefore necessarily premised on unfounded grounds. Accordingly, the district court improperly awarded UCCSN attorney fees as sanctions against Simonian under NRCP 11 and NRS 357.180.

CONCLUSION
Because an FCA plaintiff, who sues on behalf of the State, may not pursue a false claims action against the State, we affirm the portion of the district court's order granting summary judgment to UCCSN. As the district court never reached the merits of Simonian's action and the record contains insufficient information to support the district court's determination that Simonian's false claim action was not well-grounded in fact or law, however, we reverse the district court's award of attorney fees as sanctions against Simonian.
NOTES
[1] NRS Chapter 357.
[2] NRS 281.641(1) provides, in relevant part, as follows:

If any reprisal or retaliatory action is taken against a state officer or employee who discloses information concerning improper governmental action within 2 years after the information is disclosed, the state officer or employee may file a written appeal with a hearing officer of the Department of Personnel for a determination of whether the action taken was a reprisal or retaliatory action.
[3] Wood v. Safeway, Inc., 121 Nev. ___, ___, 121 P.3d 1026, 1029 (2005).
[4] Id.
[5] NRS 357.040(1)(a), (b), (h); NRS 357.050; NRS 357.070; NRS 357.080; see also International Game Tech. v. Dist. Ct., 122 Nev. ___, 127 P.3d 1088 (2006).
[6] NRS 357.020.
[7] Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 780, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); accord Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); see also United States v. Cooper Corp., 312 U.S. 600, 604-05, 61 S.Ct. 742, 85 L.Ed.2d 1071 (1941); United States v. Fox, 94 U.S. 315, 321, 24 L.Ed. 192 (1876) (noting that if a New York law intended to give the federal government "person" status, "[i]t would require an express definition to that effect").
[8] Pittman v. Lower Court Counseling, 110 Nev. 359, 363, 871 P.2d 953, 956 (1994) (pointing out that the court's holding in Northern Nev. Ass'n Injured Workers v. SIIS, 107 Nev. 108, 807 P.2d 728 (1991), was based on the "`often-expressed understanding' that the term `person' does not include the sovereign, and statutes using the word[, such as 42 U.S.C. § 1983,] are interpreted to exclude it" (quoting Will, 491 U.S. at 64, 109 S.Ct. 2304)), overruled in part on other grounds by Nunez v. City of North Las Vegas, 116 Nev. 535, 1 P.3d 959 (2000).
[9] See Will, 491 U.S. at 73, 109 S.Ct. 2304 (Brennan, J., dissenting) ("The idea that the word `persons' ordinarily excludes the sovereign can be traced to the `familiar principle that the King is not bound by any act of Parliament unless he be named therein by special and particular words.'" (quoting Savings Bank v. United States, 86 U.S. (19 Wall.) 227, 239, 22 L.Ed. 80 (1873))).
[10] Vermont Agency of Natural Resources, 529 U.S. at 781, 120 S.Ct. 1858 (quoting Cooper Corp., 312 U.S. at 604-05, 61 S.Ct. 742).
[11] NRS 357.200 to 357.230; see also Harris Assocs. v. Clark County Sch. Dist., 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (recognizing that a statute's language "`should not be read to produce absurd or unreasonable results'" (quoting Glover v. Concerned Citizens for Fuji Park, 118 Nev. 488, 492, 50 P.3d 546, 548 (2002), overruled in part on other grounds by Garvin v. Dist. Ct., 118 Nev. 749, 59 P.3d 1180 (2002))).
[12] International Game Tech., 122 Nev. at ___, 127 P.3d at 1101.
[13] Cook County v. United States ex rel. Chandler, 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003); Vermont Agency of Natural Resources, 529 U.S. 765, 120 S.Ct. 1858.
[14] See generally Custom Cabinet Factory of N.Y. v. Dist. Ct., 119 Nev. 51, 54, 62 P.3d 741, 742-43 (2003) (recognizing that state courts are free to interpret state law, despite contrary interpretations of similar federal law by federal courts).
[15] See generally Edgington v. Edgington, 119 Nev. 577, 584, 80 P.3d 1282, 1288 (2003) (recognizing that, unless contrary to legislative intent, state statutes substantially similar to previously enacted federal statutes should be construed in the same manner).
[16] Vermont Agency of Natural Resources, 529 U.S. at 783-84, 120 S.Ct. 1858.
[17] Id.
[18] Id. at 781-82, 120 S.Ct. 1858.
[19] We reject Simonian's argument that the Supreme Court's decisions are inapplicable to this issue, but that instead, this court should adhere to the reasoning set forth in LeVine v. Weis, 68 Cal.App.4th 758, 80 Cal.Rptr.2d 439 (1998), as further explained on appeal after remand, 90 Cal. App.4th 201, 108 Cal.Rptr.2d 562 (2001). In Weis, the California Court of Appeal considered whether an action could be maintained under California's FCA against a governmental agency, namely, a county juvenile hall's school. Id. at 440. In determining that the action was allowable, the California court pointed out that the governmental agency fit within the California FCA's express definition of a "person" subject to liability, and it distinguished Supreme Court cases based on the particular circumstances at play in Weis, especially as there was no indication in that case that the State would in any way be responsible for paying any judgment against the agency. Id. at 440, 443. But Weis did not present a situation identical to this one, in which a state entity is essentially being sued to recover funds for the State. Further, state entities do not fit within the meaning of "person" under Nevada's FCA.
[20] NRS 396.020.
[21] Nev. Const. art. 11, §§ 4, 7; see also University System v. DR Partners, 117 Nev. 195, 205, 18 P.3d 1042, 1049 (2001) (recognizing that "the sovereign functions of higher education repose in the Board of Regents," which has been constitutionally entrusted to control and manage the University).
[22] Nev. Const. art. 11, § 6.
[23] Id.; NRS 396.370(2). Despite Simonian's contention that UCCSN can use nonstate funds to reimburse the state, any judgment against UCCSN may implicate the state's general fund. Nev. Const. art. 11, § 6; NRS 396.370(2); see also Meza v. Lee, 669 F.Supp. 325, 328 (D.Nev. 1987) (pointing out that a judgment against UNR and the Board of Regents would be paid out of the State's general fund (citing Johnson v. University of Nevada, 596 F.Supp. 175, 177-78 (D.Nev.1984))).
[24] NRS 396.505.
[25] NRS 396.120.
[26] NRS 396.380; DR Partners, 117 Nev. at 203, 18 P.3d at 1047.
[27] See NRS 396.809-.885 (University Securities Law). In DR Partners, 117 Nev. at 204 & n. 25, 18 P.3d at 1048 & n. 25, we pointed out that the university securities law, while defining the Board of Regents and the University of Nevada as political subdivisions, is specific only to those provisions, and we recognized that "UCCSN is not a political subdivision."
[28] 107 Nev. 108, 112-13, 807 P.2d 728, 731 (1991).
[29] Cf. Graham v. State, 956 P.2d 556, 562 (Colo. 1998) (considering three factors in determining whether an entity is a "person" or an arm of the state for § 1983 purposes: (1) the entity's characterization under state law; (2) the degree of State control over the entity; and (3) whether any judgment ultimately would be satisfied from state funds).
[30] Meza, 669 F.Supp. at 328 (pointing out that a judgment against UNR and the Board of Regents would be paid out of the State's general fund (citing Johnson, 596 F.Supp. at 177-78)).
[31] See, e.g., NRS 543.550(2) (providing, in the context of right-of-ways over public lands, for notice to be given to the Division of State Lands and "any other agency or entity of the state owning land in the area, including the [UCCSN]"); cf. DR Partners, 117 Nev. at 204 n. 25, 18 P.3d at 1048 n. 25 (noting that the university securities law, while defining the Board of Regents and the University of Nevada as political subdivisions, is specific only to those provisions); NRS 396.7994, 396.803 (providing that any nonprofit corporation formed by the Board of Regents for the acquisition of real property for the future development of UNR and UNLV, respectively, is "[a] corporate agency of [UCCSN] and the Board of Regents; ... and ... [a] political subdivision of this state").
[32] See DR Partners, 117 Nev. at 205, 18 P.3d at 1049 (connecting education to sovereign functions); Johnson, 596 F.Supp. at 177 ("[T]he Board [of Regents] was created by the Nevada constitution to perform state functions.").
[33] See Johnson, 596 F.Supp. at 177-78 (pointing out that UCCSN is constitutionally mandated, comprehensively controlled by the Legislature, and fiscally tied to the state, and thus "operates as a branch of the Nevada State government"); accord Meza, 669 F.Supp. at 328 (concluding that UNR and the UNR Police Department are part of UCCSN, and thus entitled to Eleventh Amendment immunity).
[34] See, e.g., Kashani v. Purdue University, 813 F.2d 843, 845 (7th Cir.1987) (pointing to numerous cases determining that universities are state entities and noting that, "given the great number of cases holding state universities to be instrumentalities of the state for Eleventh Amendment purposes, it would be an unusual state university that would not receive immunity"); Graham, 956 P.2d at 563, 565-66 (noting that "several courts have held that a State's choice of a corporate form for its colleges or universities or their governing boards does not waive sovereign immunity," and concluding that the University of Northern Colorado was a state entity for immunity purposes even though its corporate form was similar to that of a municipality and it received limited funding from nonstate sources); 15A Am. Jur.2d Colleges and Universities § 44, at 318 (2000) (recognizing that "universities or colleges which are public or quasi-public corporations created and existing under state law and exercising a governmental function, or their governing boards, cannot generally, in the absence of express statutory authority therefor, be sued").
[35] U.S. v. Regence Bluecross Blueshield of Utah, 334 F.Supp.2d 1278, 1281 (D.Utah 2004).
[36] Bergmann v. Boyce, 109 Nev. 670, 676, 856 P.2d 560, 564 (1993); see U.S. ex rel. Grynberg v. Praxair, Inc., 389 F.3d 1038, 1055 (10th Cir. 2004) (applying an abuse of discretion standard when reviewing an award of attorney fees under the federal FCA); U.S. ex rel. Fine v. MK-Ferguson Co., 99 F.3d 1538, 1548 (10th Cir.1996) (same).
[37] NRCP 11 (amended 2004).
[38] Jordan v. State, Dep't of Motor Vehicles, 121 Nev. ___, ___ n. 16, 110 P.3d 30, 41 n. 16 (2005) (internal quotations omitted) (noting that the second part of the definition of "frivolous," "`whether the attorney made a reasonable and competent inquiry,' is inapplicable to nonattorney litigants proceeding in proper person" (citing Bergmann, 109 Nev. at 676, 856 P.2d at 564)).
[39] Cf. Grynberg, 389 F.3d at 1058-59 (noting that sufficient justification for an award of attorney fees as a sanction does not include merely losing the case, but may include persisting with a suit in which a lack of merit has become apparent (citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978))).
[40] NRS 281.621.
[41] See also NAC 281.315.
[42] NRS 281.641(2).
[43] McKay v. Bd. of Supervisors, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986).
[44] See Hearing on S.B. 293 Before the Senate Gov't Affairs Comm., 66th Leg. (Nev., Apr. 8, 1991) (discussing the public policy of allowing for full disclosure, including to legislative bodies and the press, of improper governmental action, abuse of authority, and waste of money, and expressing a desire to protect public employees who wish "to be candid with the legislature and other concerned persons about information, needing this protection to feel free to testify before a legislative committee"); id. at Exs. C, D (explaining that proposed amendments, which contain the current language of NRS 281.641 and replaced the bill's original language protecting from retaliation employees who provide information on matters warranting further investigation or "given in good faith," as determined by an ethics commission, would protect employees who bring incidents of wrongdoing to the legislature and apparently would cure problems associated with the ethics commission's lack of enthusiasm over the original proposal).
[45] Compare NRS 281.611-.671, Hearing on S.B. 293 Before the Senate Gov't Affairs Comm., 66th Leg. Sess. (Nev., Apr. 8, 1991), and Allum v. Valley Bank of Nevada, 114 Nev. 1313, 1324, 970 P.2d 1062, 1068 (1998) (providing that a tortious discharge claim may be based on allegations that an employee was terminated for refusing to engage in conduct based on a good-faith, reasonable belief that the conduct was illegal, even if the conduct was legal), with Hale v. Touro Infirmary, 886 So.2d 1210, 1215-16 (La.Ct.App.2004) (determining that, despite strong policy arguments to the contrary, specific language and terms in the Louisiana whistleblower statute requires employees of private employers to prove an actual violation of law before a retaliation claim for reporting that violation will lie, and inviting the state legislature to address the matter in subsequent legislation).