928 F.2d 775
 66 Ed. Law Rep. 591
 Matthew M. BENNING and Lori K. Neumann-Benning, Plaintiffs-Appellants,
v.
BOARD OF REGENTS OF REGENCY UNIVERSITIES, a body politic of
the State of Illinois doing business as Northern Illinois
University, Robin D. Rogers, individually, John R. Robinson,
individually and Joseph W. Vaughn, individually, Defendants-Appellees.
 No. 90-1626.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 25, 1990.
Decided March 26, 1991.
As Amended April 17, 1991.
Rehearing and Rehearing In Banc
Denied May 8, 1991.
 
 Robert Steven Wilson, Sycamore, Ill., John Cooney, Cooney & Conway, Chicago, Ill., for plaintiffs-appellants.
 Carol J. Fines, Bridget E. Zalcman, R. Mark Mifflin, Giffin, Winning, Cohen & Bodewes, Springfield, Ill., George M. Shur, Northern Illinois University, DeKalb, Ill., for defendants-appellees.
 Before CUDAHY and FLAUM, Circuit Judges, and PELL, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 To resolve this case, we cautiously venture into the dense tangle of fictions shrouding the doctrine of sovereign immunity. Matthew Benning filed this diversity tort action against various officials and employees of Northern Illinois University (NIU) alleging that he suffered extensive injuries as a result of their negligence. The district court dismissed Benning's claims based upon the Eleventh Amendment and Illinois law, which confers exclusive jurisdiction over tort suits against the state upon the Illinois Court of Claims. We affirm.
 
 I.
 
 2
 At the time this accident occurred, Matthew Benning was a graduate student in NIU's Chemistry Department. On March 3, 1987, while he was performing a chemical reaction utilizing the solvent tetrahydrofuran, Benning's experiment exploded showering him with shards of glass and burning chemicals. Benning and his wife, Lori Neumann-Benning, brought suit seeking damages from the Board of Regents (the Board), the governing body of NIU, and Robin Rogers, John Robinson and Joseph Vaughn, supervisor of the chemistry laboratory, manager of the laboratory and chairman of NIU's Chemistry Department, respectively. The Bennings also requested a judgment declaring NIU's chemistry laboratories unsafe, prohibiting their use and ordering institution of a policy to regulate the storage of volatile chemicals.
 
 
 3
 Concluding that the Board of Regents constitutes an arm of the state immune from suit in federal court under the Eleventh Amendment, the district court dismissed Benning's claim for pecuniary damages against the Board for lack of jurisdiction. The court also dismissed Benning's request for declaratory relief, citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), which barred a federal court injunction directing a state official to comply with state law. The court observed that, under Illinois law, the proper forum for disputes against the state is the Illinois Court of Claims. Relying upon a rather tortuous line of state cases treating suits against individual defendants for duties arising out of state employment as effectively suits against the state, the court accordingly dismissed Benning's claims for money damages against the three individual defendants, Rogers, Robinson and Vaughn.
 
 II.
 
 4
 The Eleventh Amendment immunizes unconsenting states from suit in federal court.[1] A particular suit is deemed to be one against the state if "the state is the real, substantial party in interest." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). In determining whether a state entity should be dealt with as an arm of the sovereign, the critical inquiry is whether a judgment would deplete the state treasury. See Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963) ("The general rule is that a suit is against the sovereign if 'the judgment would expend itself on the public treasury or domain....' " (quoting Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947))). Other factors to consider are whether the state entity can sue and be sued, whether it performs an essential governmental function and whether it enjoys a substantial degree of political independence from the state. See Ranyard v. Board of Regents, 708 F.2d 1235, 1238 (7th Cir.1983).
 
 
 5
 The determination whether a state entity should enjoy the protection of the Eleventh Amendment requires careful appraisal of the relationship between the state and the institution being sued. See, e.g., Soni v. Board of Trustees of the Univ. of Tenn., 513 F.2d 347, 352 (6th Cir.1975) ("Each state university exists in a unique governmental context, and each must be considered on the basis of its own peculiar circumstances."), cert. denied, 426 U.S. 919, 96 S.Ct. 2623, 49 L.Ed.2d 372 (1976). After thoughtful analysis, several courts have denied state universities Eleventh Amendment immunity. E.g., Kovats v. Rutgers, The State University, 822 F.2d 1303 (3rd Cir.1987); Hander v. San Jacinto Junior College, 522 F.2d 204 (5th Cir.1975); Gordenstein v. University of Del., 381 F.Supp. 718 (D.Del.1974). Most have elected to extend the protective shield of the Eleventh Amendment to state educational institutions, however, reasoning that judgments against them would subject the state to liability. E.g., Thompson v. City of Los Angeles, 885 F.2d 1439 (9th Cir.1989); Kashani v. Purdue University, 813 F.2d 843 (7th Cir.), cert. denied, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); Schuler v. University of Minn., 788 F.2d 510 (8th Cir.1986), cert. denied, 479 U.S. 1056, 107 S.Ct. 932, 93 L.Ed.2d 983 (1987).
 
 
 6
 We need not resolve this delicate, fact-intensive question because this case is easily decided upon other grounds.[2] Under the Erie doctrine, state rules of immunity govern actions in federal court alleging violations of state law. Erie R.R. v. Tompkins, 04 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Here, an Illinois statute specifically ousts both state and federal courts of jurisdiction over all tort suits against the Board of Regents, conferring exclusive jurisdiction upon the Illinois Court of Claims. Ill.Rev.Stat. ch. 37, para. 439.8(d) (1989). Even if the Eleventh Amendment should permit suits against the Board of Regents, this Illinois statute thus requires us to dismiss Benning's state law tort claim for pecuniary damages against the Board. See Zeidner v. Wulforst, 197 F.Supp. 23 (E.D.N.Y.1961) (state statute providing that New York Thruway Authority could be sued only in New York Court of Claims precluded suit against Authority in federal court based upon violations of state law, even though Authority was not immune under Eleventh Amendment); Gerr v. Emrick, 283 F.2d 293 (3d Cir.1960) (applying state law of immunity to federal diversity suit), cert. denied, 365 U.S. 817, 81 S.Ct. 698, 5 L.Ed.2d 695 (1961); cf. Martinez v. California, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) (upholding state immunity statute as constitutional when applied to defeat tort claim arising under state law).[3]
 
 
 7
 Regardless of the Eleventh Amendment status of the Board of Regents for the purpose of monetary damages, the Eleventh Amendment does preclude Benning's request for declaratory relief. In Ex Parte Young, the Supreme Court authorized a federal court injunction against a state official based upon the theory that his violation of federal law stripped him of his official authority. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The Court has declined, however, to extend this authority-stripping fiction beyond the limited terrain of Young. Thus in Pennhurst, 465 U.S. at 89, 104 S.Ct. at 900, the Court held that the Eleventh Amendment forbids a federal court from ordering state officials to conform their conduct to state law, reasoning that such relief is unnecessary to vindicate the supreme authority of federal law and contravenes the principles of federalism underlying the Eleventh Amendment.
 
 
 8
 Benning seeks to circumvent the rule enunciated in Pennhurst, however, by requesting a mere declaration that the Board violated state law. But the only advantage Benning could derive from such a declaration would be to present it in state court proceedings as res judicata on the issue of liability, leaving to state courts the mechanical process of tabulating damages. When a declaratory judgment "would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment," the Supreme Court has denied declaratory relief. Green v. Mansour, 474 U.S. 64, 73, 106 S.Ct. 423, 428, 88 L.Ed.2d 371 (1985). The same reasoning condemns Benning's claim for declaratory relief. Here, issuance of a federal declaratory judgment as a step toward a state damage or injunctive remedy would operate as an end-run around Pennhurst that is equally forbidden by the Eleventh Amendment. See Watkins v. Blinzinger, 789 F.2d 474 (7th Cir.1986) (holding that Eleventh Amendment rule enunciated in Pennhurst prohibits federal court from issuing declaration that state officials violated state law), cert. denied, 481 U.S. 1038, 107 S.Ct. 1976, 95 L.Ed.2d 816 (1987).
 
 
 9
 The Eleventh Amendment doctrine of sovereign immunity does not, however, insulate the three individual defendants from liability for their allegedly tortious acts. The state urges dismissal of Benning's claims for money damages against Rogers, Robinson and Vaughn on the grounds that any judgment rendered against them would be paid from the state treasury. But the state cannot manufacture immunity for its employees simply by volunteering to indemnify them. As Judge Shadur has cogently observed, "[t]o hold otherwise would give the State carte blanche to provide a meaningless kind of paper protection--granting an 'indemnification' that would, by its very existence, destroy the liability to which indemnity purportedly extends." Rubacha v. Coler, 607 F.Supp. 477, 481. Along with the majority of jurisdictions, we thus hold that a state's decision to indemnify its employees does not transform a suit against individual defendants into a suit against the sovereign. See Duckworth v. Franzen, 780 F.2d 645 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986); Wilson v. Beebe, 770 F.2d 578, 587-88 (6th Cir.1985) (en banc); Demery v. Kupperman, 735 F.2d 1139, 1146-48 (9th Cir.1984), cert. denied, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985); Downing v. Williams, 624 F.2d 612, 626 (5th Cir.1980), vacated on other grounds, 645 F.2d 1226 (1981).
 
 
 10
 Even though Rogers, Robinson and Vaughn cannot claim the cloak of official immunity cast by the Eleventh Amendment, state law demands that we dismiss Benning's claims against them.[4] As we reasoned above, state rules of immunity are binding in federal court with respect to state causes of action. See Zeidner, 197 F.Supp. at 23; Gerr, 283 F.2d 293; cf. Martinez, 444 U.S. at 277, 100 S.Ct. at 553. Here, Illinois has enacted a statute granting its court of claims exclusive jurisdiction over tort suits against the state. Ill.Rev.Stat. ch. 37, para. 439.8(d) (court of claims shall have exclusive jurisdiction over "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit ..."). This statute alone would not be dispositive because a suit against individual officials for money damages does not necessarily constitute a suit against the sovereign. See Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) ("damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office"). But Erie requires us to defer to state law--common law as well as statutory--and the common law gloss affixed to the Illinois statute indicates that suits against individuals who act within the scope of their employment are deemed to be suits against the state actionable only in the court of claims. See Healy v. Vaupel, 133 Ill.2d 295, 140 Ill.Dec. 368, 549 N.E.2d 1240 (1990) (court of claims possessed exclusive jurisdiction over student's tort suit against university employees and officials in absence of any allegation that defendants acted outside scope of their authority or in violation of statutory or constitutional law).
 
 
 11
 In Robb v. Sutton, the Illinois Court of Appeals made explicit its rule that acts performed by state agents within the scope of their official duties are to be regarded as acts of the state:
 
 
 12
 where ... there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee ... and involves actions which may be attributed to the State.
 
 
 13
 147 Ill.App.3d 710, 716, 101 Ill.Dec. 85, 90, 498 N.E.2d 267, 272 (4th Dist.1986). Benning does not allege that Rogers, Robinson and Vaughn acted outside the scope of their authority. On the contrary, he contends that it was their negligent performance of their normal, official duties in NIU's Chemistry Department that caused his injuries. In Healy, a student injured in a gymnastics accident similarly charged NIU's athletic directors with negligence, but the Illinois Supreme Court concluded that the court of claims possessed exclusive jurisdiction because there was no allegation that the defendants acted outside their authority or in violation of the law. Healy, 133 Ill.2d at 311, 140 Ill.Dec. at 376, 549 N.E.2d at 1248. We do not find any significance in the distinction between an accident in the laboratory and an accident in the gymnasium. See also Robb, 147 Ill.App.3d at 710, 101 Ill.Dec. at 85, 498 N.E.2d at 267 (holding that a suit against the assistant dean in his individual capacity for activities arising out of his official duties constituted a suit against the state over which the court of claims possessed exclusive jurisdiction).
 
 
 14
 Benning struggles to place himself within one of the narrow exceptions to this general rule. Illinois courts have carved out two limited exceptions, allowing suits for the negligent operation of automobiles by state employees, see Bartholomew v. Crockett, 131 Ill.App.3d 456, 86 Ill.Dec. 656, 475 N.E.2d 1035 (1st Dist.1985), and malpractice actions against state-employed physicians, see Madden v. Kuehn, 56 Ill.App.3d 997, 14 Ill.Dec. 852, 372 N.E.2d 1131 (2d Dist.1978), to go forward in state court. But in Healy, the Illinois Supreme Court declined to extend these exceptions, essentially confining them to their unique factual contexts. Presumably, in light of the trend traced by Healy, Illinois courts would permit Benning's claims against Rogers, Robinson and Vaughn to proceed only in the court of claims.
 
 III.
 
 15
 Under Illinois law, the proper forum for adjudication of Benning's state law tort claims against the Board of Regents and Rogers, Robinson and Vaughn is the Illinois Court of Claims. Therefore, the district court's dismissal of Benning's claims is
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The Eleventh Amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Despite its limited terms, the amendment has been construed to forbid suits prosecuted against a state by its own citizens as well. Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)
 
 
 [2]
 We are not obliged to reach the Eleventh Amendment issue because the Eleventh Amendment doctrine of sovereign immunity, though often characterized as jurisdictional, does not function as a true jurisdictional bar. Unlike other forms of subject-matter jurisdiction, sovereign immunity can, for example, be waived by consent. See Parden v. Terminal Ry., 377 U.S. 184, 192-93, 84 S.Ct. 1207, 1213, 12 L.Ed.2d 233 (1964). The Supreme Court has declared, moreover, that "we have never held that [the Eleventh Amendment] is jurisdictional in the sense that it must be raised and decided by this Court on its own motion." Patsy v. Board of Regents of Fla., 457 U.S. 496, 516 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 (1982). Given the quasi-jurisdictional character of the Eleventh Amendment, we may properly base our decision upon other grounds
 
 
 [3]
 Whether the Illinois statute conferring exclusive jurisdiction upon the Illinois Court of Claims possesses substantive attributes or is a purely procedural limitation not binding in federal court is not clear. We need not address this interesting issue, however, because it was never raised before the district court or on appeal
 
 
 [4]
 The state has not questioned the reach of Pennhurst here. Although its scope is not absolutely clear, Pennhurst does not appear to bar actions for money damages in federal court against individual state officials who have acted in violation of state law. In fact, the Pennhurst Court carefully distinguished several cases in which relief had been awarded against individual officials on the grounds that such relief did not run directly against the state, declaring that "nothing in our opinion touches these cases." Pennhurst, 465 U.S. at 111 n. 21, 104 S.Ct. at 913 n. 21