NOTICE
Decision filed 08/14/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180333

NO. 5-18-0333

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE STATE OF ILLINOIS *ex rel.* PHILLIP E. EDMONDSON, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CH-198 |
| BOARD OF TRUSTEES OF ILLINOIS EASTERN COMMUNITY COLLEGES, | ) ) ) | Honorable Stephen P. McGlynn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Cates and Barberis concurred in the judgment and opinion.

**OPINION**

¶ 1   The relator, Phillip E. Edmondson, filed this action under the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2014)). The defendant, the Board of Trustees of Illinois Eastern Community Colleges, is a community college district. The definition of the "State" in the False Claims Act includes community college districts. *Id.* § 2(a). The defendant filed a motion to dismiss, arguing that the court lacked subject matter jurisdiction. The trial court denied the motion. The defendant filed a motion to reconsider or, alternatively, to certify a question for review. See Ill. S. Ct. R. 308(a) (eff. July 1, 2017). The court certified the following question for our review: "Can an entity defined as the 'State' under the Illinois False Claims Act also be considered a 'person' liable to the State under that same Act?" We hold that an entity included in the False Claims Act's definition of the "State" is also a "person" that may be held liable to

another such entity unless the two entities are, in reality, one entity. We therefore answer the certified question in the affirmative, and we affirm the trial court's ruling.

¶ 2                                     I. BACKGROUND

¶ 3     The defendant in this case is a community college district that includes four community colleges. According to the allegations in the relator's complaint, the majority of the students who attend these four colleges live within the district. The complaint also alleges that the defendant board of trustees is locally elected and that the defendant receives the majority of its funding from tuition, fees, and local taxes. However, the defendant also receives state funding through grant programs. The issue in the relator's complaint is the defendant's eligibility for the amount of grant money it received.

¶ 4     The relator is a former instructor in the defendant's Workforce Education program. He taught mine safety training classes. Miners are required to take eight hours of safety training annually under both state and federal law. The relator taught these classes for the defendant between 2002 and 2013.

¶ 5     In 2016, the relator filed a complaint against the defendant under the Illinois False Claims Act (740 ILCS 175/1 *et seq.* (West 2014)). He alleged that the defendant defrauded the State of Illinois by claiming that miners took mine safety classes they never actually took and by inflating the number of hours of training received by miners who did take the classes. The relator explained that the defendant received funding under three state grant programs. He explained that the amount of funding community college districts qualify for under all three programs depends on the number of credit hours (or the equivalent) completed by its students. He alleged that because the defendant fraudulently overstated the hours of training miners received, it received substantially more funding than it was entitled to under the three grant programs.

¶ 6     The defendant filed a motion to dismiss the relator's complaint. The defendant argued, as it does in this appeal, that because it falls within the broad statutory definition of the "State," the

case does not present a justiciable controversy between two different parties with adverse interests. As such, the defendant argued, the trial court lacked jurisdiction to consider the case. The court denied the motion.

¶ 7    The defendant filed a motion to reconsider or, in the alternative, to certify a question for interlocutory review under Illinois Supreme Court Rule 308 (eff. July 1, 2017). The court denied the motion to reconsider but granted the motion to certify a question. As stated previously, the question certified for our review is: "Can an entity defined as the 'State' under the Illinois False Claims Act also be considered a 'person' liable to the State under that same Act?" We turn our attention now to answering that question.

¶ 8                                    II. ANALYSIS

¶ 9    When deciding an appeal under Illinois Supreme Court Rule 308, the scope of our review is limited to answering the certified question. *People ex rel. Levenstein v. Salafsky*, 338 Ill. App. 3d 936, 941-42 (2003). Because certified questions present issues of law, we apply a *de novo* standard of review. *Id.* at 942. Resolution of the question presented in this case requires us to construe provisions of the False Claims Act. Our goal in doing so is to ascertain the intent of the legislature. The best indication of legislative intent is the statutory language itself. *Id.* If that language is clear and unambiguous, it must be given its plain and ordinary meaning. If there is any ambiguity, however, we may consider aids of statutory construction such as legislative history. *Id.* We must also presume that the legislature did not intend an unjust or absurd result. *Township of Jubilee v. State of Illinois*, 2011 IL 111447, ¶ 36.

¶ 10    The False Claims Act provides that "any person" is liable to the State if that person knowingly presents a false or fraudulent claim to the State. 740 ILCS 175/3(a)(1) (West 2014). The statutory definition of "claims" includes demands or requests for money or property presented to agents or officials of the State and, under certain circumstances, requests for money or property made to recipients of State funds. *Id.* § 3(b)(2)(A)(i), (ii). A private relator may file a

civil action for violations of the False Claims Act. *Id.* § 4(b)(1). The relator has the right to conduct the action if the Attorney General declines to do so (*id.* § 4(b)(4)(A), 4(c)(3)) and is entitled to be awarded a portion of any eventual recovery (*id.* § 4(d)). However, actions by private relators must be brought in the name of the State (*id.* § 4(b)(1)), and the State is the real party in interest in such actions (see *State ex rel. Beeler, Schad & Diamond, P.C. v. Burlington Coat Factory Warehouse Corp.*, 369 Ill. App. 3d 507, 513 (2006)).

¶ 11    Originally, the False Claims Act's definition of the "State" included only the State of Illinois. See Ill. Rev. Stat. 1991, ch. 127, ¶ 4102. It now provides a broad statutory definition of the "State," which includes the State of Illinois, state agencies, and the state university system, as well as several types of local entities—school districts, community college districts, counties, municipalities, municipal corporations, and units of local government. 740 ILCS 175/2(a) (West 2014). The defendant, as a community college district, falls within this broad definition. There is no doubt that a private relator can bring a False Claims Act suit to recover damages on behalf of a local entity like the defendant that is included in that definition. See *Lyons Township ex rel. Kielczynski v. Village of Indian Head Park*, 2017 IL App (1st) 161574, ¶ 14. The question in this case is whether the broad definition of the "State" means that an entity such as the defendant cannot be a "person" subject to liability under the False Claims Act in cases where it is alleged to have made fraudulent claims against another entity that is also included in that definition.

¶ 12    The False Claims Act does not define the term "person." Under general principles of Illinois law, however, individuals and "bodies politic and corporate" may be included within the definition of " '[p]erson.' " 5 ILCS 70/1.05 (West 2014). The Public Community College Act provides that "[t]he board of each community college district is a body politic and corporate" that "may sue and be sued in all courts and places where judicial proceedings are had." 110 ILCS 805/3-11 (West 2014). Thus, for most purposes, a community college district such as the defendant is a "person" under Illinois law.

¶ 13    As we have already discussed, however, under the False Claims Act, both the State of Illinois, which is the real plaintiff in this case, and the defendant are included within the statutory definition of the "State." The defendant argues that, giving this statutory definition its plain and unambiguous meaning, the State of Illinois and the defendant must be deemed to be the same entity. As the defendant correctly points out, a controversy between parties that are, in reality, the same entity is not a justiciable matter due to "the long-recognized general principle that no person may sue himself." *United States v. Interstate Commerce Comm'n*, 337 U.S. 426, 430 (1949). It is worth noting that, ordinarily, a suit by a community college district against a state agency is considered a justiciable controversy between separate entities. See, *e.g.*, *Board of Trustees of Community College District No. 502 v. Department of Professional Regulation*, 363 Ill. App. 3d 190 (2006). The question before us, then, is whether the broad statutory definition of the "State" found in the False Claims Act is sufficient to transform what are otherwise two distinct entities—the State of Illinois and a local community college district—into one entity for purposes of False Claims Act liability. If our answer to that question is yes, then we would have to conclude that the trial court lacks jurisdiction over the relator's suit. See Ill. Const. 1970, art. VI, § 9 (providing that Illinois circuit courts have jurisdiction over "all justiciable matters"). For the reasons that follow, however, we conclude that the answer to this question is no.

¶ 14    The defendant argues that by including local entities such as community college districts in the broad statutory definition of the "State," the legislature clearly evinced an intent to exclude them from liability under the False Claims Act. In support of this contention, the defendant correctly notes that the legislature is presumed to understand existing case law when it enacts legislation. See *Guzman v. 7513 West Madison Street, Inc.*, 2013 IL App (1st) 122161, ¶ 37. The defendant argues that we must therefore presume that the legislature understood the principle that a party cannot sue itself when it enacted the current version of the statute defining the "State." As such, the defendant argues, we must also presume that the legislature knew that the

effect of including various state and local entities in the statutory definition of the "State" would be to exclude those entities from liability. The defendant urges us to conclude that the legislature must have intended that result. We are not persuaded.

¶ 15    The defendant's argument overlooks the very nature of the concept of justiciability and would lead to an absurd result. A justiciable case is one that involves a controversy between parties with adverse legal interests. *City of Chicago v. Chicago Board of Education*, 277 Ill. App. 3d 250, 261 (1995). While it seems fairly obvious that no individual may have adverse legal interests with himself or herself, the question is often less clear when the parties are governmental entities. As the cases we will discuss in the remainder of this opinion will illustrate, the question of whether governmental entities have adverse legal interests depends not on their nomenclature, but on the nature of their relationship. As we have already noted, this case involves a dispute between two types of governmental entities that have been recognized as separate entities with adverse legal interests in other contexts. See *Community College District No. 502*, 363 Ill. App. 3d 190. Based on the allegations in the relator's complaint, the parties appear to have adverse legal interests in this case as well. The only basis the defendant offers for its argument to the contrary is the fact that both entities are included in the False Claims Act's broad definition of the "State." This argument elevates form over substance, something we must not do when construing statutory provisions. See *Township of Jubilee*, 2011 IL 111447, ¶ 35. We do not believe the legislature intended the form of its statutory definition of the "State" to defeat jurisdiction over controversies that are, in substance, justiciable matters between parties with adverse legal interests. Such a result would be absurd. See *id.* ¶ 36 (stating that courts must construe statutes to avoid absurd results).

¶ 16    The defendant's argument also overlooks both the purpose underlying the False Claims Act and the legislative history of the provision at issue. The Illinois False Claims Act is closely modeled after the federal False Claims Act. *Levenstein*, 338 Ill. App. 3d at 942. The term

"person" is not defined under either act. See *Cook County v. United States ex rel. Chandler*, 538 U.S. 119, 125 (2003); see also 31 U.S.C. § 3729 (2000); 740 ILCS 175/2 (West 2014). Interpreting that term in the federal legislation, the United States Supreme Court has held that local governments are "persons" that may be liable to the federal government for fraudulent claims. *Chandler*, 538 U.S. at 122. In light of the similarities between the two acts, Illinois courts generally do not interpret provisions of the Illinois False Claims Act more narrowly than their federal counterparts. See *Levenstein*, 338 Ill. App. 3d at 946.

¶ 17    The Supreme Court reached its conclusion for two reasons, both of which are equally applicable in construing the Illinois False Claims Act. First, the Court noted that the usual definition of a "person" includes municipalities. *Chandler*, 538 U.S. at 126. Second, the Court observed that "local governments are commonly at the receiving end of all sorts of federal funding schemes and [are] thus no less able than individuals or private corporations to impose on the federal fisc and exploit the exercise of the federal spending power." *Id.* at 129. The Court emphasized that Congress amended the federal False Claims Act in 1986 to make it a more effective weapon against "pervasive fraud in 'all Government programs.' " *Id.* at 133 (quoting S. Rep. No. 99-345, at 2 (1986), *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5267).

¶ 18    Cook County argued, however, that some of the changes made by the 1986 amendments were at odds with the premise of municipal liability. Specifically, the county pointed to provisions increasing the fines that may be imposed and permitting treble, rather than double, damages. *Id.* at 129-30. The county pointed out that these changes transformed "what had been a 'remedial' provision into an 'essentially punitive' one." *Id.* at 130 (quoting *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 784-85 (2000)). It argued that because municipal governments are not generally subject to punitive damages under federal law (*id.* at 129), Congress must have intended to eliminate municipal false claims liability when it enacted the 1986 amendments (*id.* at 130). The Supreme Court rejected this argument, explaining

that it was "simply not plausible" that Congress could have intended to make local governments immune from liability through legislative amendments that were intended to strengthen the federal government's ability to fight fraud. *Id.* at 133-34.

¶ 19   We believe a similar analysis is warranted here for three reasons. First, as previously discussed, the defendant is a "body politic and corporate" with the ability to sue and be sued in its own name. 110 ILCS 805/3-11 (West 2014). This makes it a "person" under general principles of Illinois law (see 5 ILCS 70/1.05 (West 2014)), much as Cook County is a "person" under general principles of federal law (see *Chandler*, 538 U.S. at 126). Second, as the allegations of the relator's complaint demonstrate, the defendant is a local entity that receives state funding through grants, and it is therefore "no less able than individuals or private corporations" to defraud the State of Illinois when applying for such funding. See *id.* at 129 (making a similar observation).

¶ 20   Third, much as the 1986 amendments at issue in *Chandler* were meant to strengthen the federal False Claims Act (*id.* at 133-34), the changes our legislature has made to the statutory definition of the "State" in our False Claims Act indicate a legislative intent to strengthen that act by broadening its applicability. As we noted earlier, when the Illinois False Claims Act was enacted, the only governmental entity included in its definition of the "State" was the State of Illinois itself. Ill. Rev. Stat. 1991, ch. 127, ¶ 4102. Since that time, the legislature has twice broadened this definition.

¶ 21   In 1996, the definition of the "State" was amended to include the State of Illinois and "any agency of State government." Pub. Act 89-260, § 5 (eff. Jan. 1, 1996) (amending 740 ILCS 175/2(a)). The amendment also provided that additional state and local entities would be included in the statutory definition of the "State" if those entities elected "to adopt the provisions" of the False Claims Act through an ordinance or resolution. *Id.* The entities that could make this election included the state university system, local school districts, community

college districts, municipalities, and units of local government. *Id.* This provision was known as the opt-in clause. *Levenstein*, 338 Ill. App. 3d at 947.

¶ 22     In 2008, the statutory definition of the "State" was amended to its present form. The amendment removed the opt-in clause. The current version provides that all of the governmental entities that were previously included in the definition of the "State" only if they opted into the False Claims Act are now included in that definition without having to take any action. Pub. Act 95-128, § 10 (eff. Jan. 1, 2008) (amending 740 ILCS 175/2(a)).

¶ 23     It would make no sense to interpret these amendments—which have expanded the scope of the False Claims Act by making it applicable to fraudulent claims against an increasing number of governmental entities—in a manner that would instead limit its scope by effectively making local governmental entities immune from liability. The purpose of the False Claims Act is to provide mechanisms to reveal and remedy fraud against governmental entities. It is not meant "to protect a government entity engaging in fraud." *Lyons Township*, 2017 IL App (1st) 161574, ¶ 14. The defendant's interpretation is at odds with this purpose. We therefore conclude that the inclusion of entities such as the defendant in the statutory definition of the "State" does not automatically render disputes between such entities nonjusticiable matters.

¶ 24     We find support for our conclusion in *Lyons Township*. That case involved a dispute between two local government entities, both of which are included in the statutory definition of the "State." See *id.* ¶¶ 1, 14. We acknowledge that *Lyons Township* did not address the precise question before us. There, neither party argued that the matter was not justiciable. We note, however, that because justiciability is a jurisdictional requirement, the court had an independent obligation to consider the question if it believed that the trial court may have lacked jurisdiction. See *Bradley v. City of Marion, Illinois*, 2015 IL App (5th) 140267, ¶ 13. Moreover, we find the court's analysis of the False Claims Act as a whole relevant and instructive.

¶ 25 That case involved a dispute over payments under a contract between the Village of Indian Head Park (Village) and Lyons Township for police services. The contract called for Village police officers to provide services to unincorporated areas of Lyons Township, and the Township was to compensate the Village for their services. *Lyons Township*, 2017 IL App (1st) 161574, ¶ 3. The relator, a retired Lyons Township police officer, filed a suit against the Village under the False Claims Act. He alleged that the Village billed the Township for more hours of police services than its officers actually provided. *Id.*

¶ 26 The issue before the court was the applicability of a provision of the False Claims Act called the public disclosure bar. *Id.* ¶ 11. Under that provision, an action must be dismissed " 'if substantially the same allegations or transactions as [those] alleged in the action *** were publicly disclosed *** in a *** State report.' " *Id.* (quoting 740 ILCS 175/4(e)(4)(A)(ii) (West 2014)). The purpose of the public disclosure bar is "to strike a balance between encouraging private persons to root out fraud while stifling parasitic lawsuits." *Id.* ¶ 18. The allegations in the relator's complaint were based on information and records provided to him by the Village in response to Freedom of Information Act (FOIA) requests. *Id.* ¶¶ 3, 12. The primary issue in the case was whether these FOIA responses were "State reports" for purposes of the public disclosure bar. *Id.* ¶ 12. The trial court found that they were. Accordingly, it dismissed the complaint. *Id.* ¶ 4.

¶ 27 On appeal to the First District, the relator argued that the records provided by the Village in response to his FOIA requests were not "State reports" within the meaning of the statute because the "State" meant "Lyons Township, the government unit on whose behalf the lawsuit was raised." *Id.* ¶ 12. Thus, he argued, records received from the Village could not qualify as "State reports." *Id.* The First District agreed. *Id.* ¶ 20. The court acknowledged that the False Claims Act's broad definition of the "State" can include local units of government like the

Village, but the court concluded that in the case before it, the "State" meant "the unit of government allegedly being defrauded, namely, Lyons Township." *Id.* ¶ 14.

¶ 28 The court reached this conclusion after examining the role of the "State" in False Claims Act proceedings, as set forth in other provisions of the False Claims Act. For example, the court noted that the "State" has the authority to dismiss a private relator's suit even over the relator's objection. *Id.* (citing 740 ILCS 175/4(c) (West 2014)). The court explained that while it is logical for a "defrauded government unit" to have this authority, it would not make sense for any other government unit to have the authority to dismiss an action. *Id.* The court also pointed to the requirement that private relators bring false claims actions in the name of the State. *Id.* (citing 740 ILCS 175/4(b) (West 2014)). The court explained that it would not make sense for a relator to bring an action "*on behalf of* a government entity engaging in fraud, or any other random government unit with no ties to the claim." (Emphasis in original.) *Id.* The court therefore concluded that under the facts before it, the term "State report" meant a report provided by the government entity alleged to have been defrauded. *Id.* ¶ 18.

¶ 29 We agree with the First District's reasoning. The defendant argues, however, that the First District explicitly limited its holding to cases involving the public disclosure bar. The defendant points to the court's statement that "*in this context*, 'State' means the unit of government allegedly being defrauded." (Emphasis added.) *Id.* ¶ 14. The defendant also points out that the court held that a "State report" was a report of the entity that had allegedly been defrauded "under the circumstances of this case." *Id.* ¶ 18. We are not persuaded. As we have just discussed, the First District carefully examined provisions of the False Claims Act other than the public disclosure bar in order to arrive at its conclusion. The court reached the conclusion it did primarily because it found that applying the statutory definition of the "State" to government entities other than the one allegedly defrauded would lead to absurd results under multiple provisions of the False Claims Act. When the court said "in this context" and "under the

circumstances of this case," it was not limiting its interpretation to cases involving the public disclosure bar; rather, it was referring to cases involving two entities that both fit within the broad statutory definition of the "State." We believe the broad statutory definition of the "State" is intended to apply to the governmental entity that has allegedly been defrauded. For all the reasons we have discussed, we hold that an action involving two entities that fit within this definition is not transformed into a nonjusticiable matter merely because both entities fit within the definition of the "State."

¶ 30    This does not end our inquiry, however. We recognize that, in many instances, the various state and local entities included within the statutory definition of the "State" may be so closely intertwined that they are, in essence, the same party. This is particularly likely in cases involving the State of Illinois itself and any state agency. In such cases, a suit on behalf of the State of Illinois would not present a justiciable case or controversy. We must therefore consider whether the defendant is, in essence, part of the State of Illinois.

¶ 31    In further support of its position that it is a state entity, the defendant cites three federal court cases that have addressed a similar question—whether private relator claims brought against federal government entities under the federal False Claims Act present justiciable controversies. See *Prevenslik v. United States Patent & Trademark Office*, No. 1:05CV498, 2005 WL 6047270 (E.D. Va. June 16, 2005); *Juliano v. Federal Asset Disposition Ass'n*, 736 F. Supp. 348 (D. D.C. 1990); *Sweeney v. Federal Deposit Insurance Corp.*, No. 96-5129, 1997 WL 358255 (D.C. Cir. 1997) (*per curiam*) (unpublished decision pursuant to D.C. Circuit Rule 36(b)). Because the Illinois False Claims Act was modeled after the federal False Claims Act, we may look to federal courts for guidance in interpreting its similar provisions. See *Levenstein*, 338 Ill. App. 3d at 942. We find no support for the defendant's position in any of these cases.

¶ 32    *Juliano* involved a suit under the federal False Claims Act against the Federal Asset Disposition Association (FADA), an entity set up in the 1980s to handle the management and

disposition of assets from failing savings and loan institutions. *Juliano*, 736 F. Supp. at 350. Although FADA was chartered as a savings and loan institution, it was wholly owned and controlled by a federal government agency. *Id.* A private relator filed a False Claims Act suit against FADA, alleging that FADA presented false claims to the federal agency controlling it for expenses, salaries, and payments to subcontractors. *Id.* The federal government filed a motion to dismiss the suit, arguing that a suit by the United States against a federal entity such as FADA did not present a justiciable controversy because it was "an action by the United States against the United States." *Id.* at 351. The district court agreed. *Id.* at 353.

¶ 33    It is important to emphasize that, in reaching this conclusion, the *Juliano* court did not stop its analysis with the fact that FADA was, in name, a federal government entity. Indeed, the court acknowledged that, under some circumstances, a justiciable claim or controversy may be present in a dispute between federal agencies. *Id.* at 352 (citing *United States v. Nixon*, 418 U.S. 683, 693 (1974), *Interstate Commerce Comm'n*, 337 U.S. 426, and *United States v. Federal Maritime Comm'n*, 694 F.2d 793 (D.C. Cir. 1982)). The court emphasized, however, that in the case before it, "any 'recovery' in favor of the United States and against FADA would be purely academic; plaintiff and defendant are one." *Id.* This was so, the court explained, because any judgment rendered in the case would necessarily be paid from the federal treasury. The assets of FADA had been transferred to a federal agency for purposes of liquidation. *Id.* at 351. The court therefore dismissed the action. *Id.* at 353. The courts in *Prevenslik* and *Sweeney* likewise concluded that federal False Claims Act suits by private relators against federal agencies were subject to dismissal because they were, in essence, actions by the United States against the United States. *Prevenslik*, 2005 WL 6047270, at *1; *Sweeney*, 1997 WL 358255, at *1.

¶ 34    The question before this court, however, is not whether an entity that is, in essence, a state entity may be sued under the Illinois False Claims Act when the real plaintiff is the State of Illinois. The answer to that question is indisputably no. Rather, the question before us is whether

the defendant is, in fact, such an entity. Of the federal cases cited by the defendant, only *Juliano* included an analysis of the relevant question, and we find that case to be distinguishable.

¶ 35    As just discussed, the *Juliano* court found that FADA was, in essence, the same party as the federal government primarily because any recovery would have to come from the federal treasury. *Juliano*, 736 F. Supp. at 352. The court also found it significant that FADA was controlled by a federal agency. *Id.* at 350. Here, by contrast, the defendant is controlled by a locally elected board of trustees. See 110 ILCS 805/3-5, 3-6, 3-7 (West 2014) (governing elections of board members). According to the allegations of the relator's complaint, the defendant receives the majority of its funding from local taxes and from fees and tuition paid by students. Because this matter comes to us after a ruling on a motion to dismiss, we must take all well-pleaded facts in the complaint as true. *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 18. Although the defendant does receive state funds, those funds come from grants it may receive "when eligible." 110 ILCS 805/2-16.02 (West 2014). Thus, unlike the circumstances involved in *Juliano*, any eventual recovery will not be paid directly from the state treasury, and the defendant is largely controlled at the local level. Thus, *Juliano* does not control our decision.

¶ 36    Our research has uncovered no federal or Illinois cases that are directly on point. We must therefore look to the decisions of other states for guidance. We find the approach taken by the Nevada Supreme Court in *Simonian v. University & Community College System of Nevada*, 128 P.3d 1057 (Nev. 2006) (*per curiam*), to be instructive and persuasive. We note, however, that due to factual distinctions between *Simonian* and this case, we will reach a different result than the one reached by the *Simonian* court.

¶ 37    *Simonian* involved a claim under Nevada's False Claims Act, which, like its Illinois counterpart, is patterned after the federal False Claims Act. *Id.* at 1060. Like both the federal and Illinois versions, Nevada's False Claims Act does not include a statutory definition of the term "person." *Id.* at 1059.

¶ 38    The relator in *Simonian*, like the relator here, was a former instructor at a community college. *Id.* at 1058. He filed a complaint against the University and Community College System of Nevada (UCCSN) under Nevada's False Claims Act. *Id.* at 1059. He alleged that UCCSN presented claims to the Nevada Legislature for $16 million more than it actually paid to its part-time community college instructors in salaries. *Id.* UCCSN filed a motion to dismiss, which the trial court treated as a motion for summary judgment. The trial court granted the motion, finding that UCCSN was not a "person" that could be liable under the Nevada's False Claims Act. *Id.*

¶ 39    On appeal, the Nevada Supreme Court first considered whether state entities are "persons" that can be liable under Nevada's False Claims Act. It noted that under a "long-standing principle of statutory construction," the term " 'person' " does not generally include the State. *Id.* As such, the court explained, absent express statutory language "specifying that the term 'person' includes state entities," there is a presumption that the legislature did not intend for state entities to be "persons" subject to liability under the Nevada's False Claims Act. *Id.* at 1060.

¶ 40    The court acknowledged that this presumption is not absolute, but found the presumption to be applicable for two reasons. First, the court explained,

> "It would simply make no sense to interpret [Nevada's False Claims Act] to allow the Attorney General or a private plaintiff, acting on the State's behalf, to sue a state entity to recover state funds; a successful action would not actually 'recover' funds for the State, but would rather merely require the State to reallocate resources between state entities ***." *Id.*

Second, the court noted that pursuant to United States Supreme Court precedent, states and state entities are *not* "persons" subject to liability under the federal False Claims Act, while local entities *are* "persons" subject to liability. The *Simonian* court explained that, because Nevada's False Claims Act was modeled after its federal counterpart, the court could look to these

Supreme Court cases for guidance. *Id.* The court therefore concluded that state entities are not subject to False Claims Act liability. *Id.* at 1061.

¶ 41 Next, the court went on to consider whether UCCSN is a state entity. The court noted that UCCSN is administered by the Board of Regents, a board vested by Nevada's state constitution with the authority to manage the state university system. *Id.* The court further noted that if funds from other sources are inadequate to meet its needs, UCCSN must apply to the state legislature for " 'direct legislative appropriation from the general fund.' " *Id.* (quoting Nev. Const., art. 11, § 6). The court also observed that the Board of Regents is required to submit four-year plans to the legislature and provide copies of the minutes of its meetings to the governor. *Id.*

¶ 42 The court then pointed out that federal district courts had previously determined that UCCSN was a state entity for eleventh amendment purposes. *Id.* at 1062. Under the eleventh amendment, states and state entities are immune from lawsuits in federal court. *Hess v. Port Authority Trans-Hudson Corp.*, 513 U.S. 30, 39 (1994). The *Simonian* court found federal cases addressing eleventh amendment concerns to be a good source of guidance for determining state entity status in the context of state False Claims Act liability. The court explained that "the analysis for determining an entity's status for Eleventh Amendment purposes is similar to the distinctions made for [Nevada's False Claims Act] purposes—*i.e.*, state entities are entitled to immunity while local governments are not." *Simonian*, 128 P.3d at 1062.

¶ 43 The *Simonian* court explained that federal courts previously found UCCSN to be a state entity because it was mandated by the state constitution, "comprehensively controlled by the Legislature, and fiscally tied to the state." *Id.* at 1062 n.33 (citing *Johnson v. University of Nevada*, 596 F. Supp. 175, 177-78 (D. Nev. 1984)). The court therefore concluded that UCCSN was a state entity and, as such, was not a "person" subject to liability under Nevada's False Claims Act. *Id.* at 1062.

¶ 44 We agree with the Nevada Supreme Court's approach to the question. We recognize—as the defendant points out—that immunity from suits in federal court under the eleventh amendment and justiciability in state false claims act suits involve different concerns. However, the key question in both contexts is whether the entity being sued is, in reality, an arm of the state or a separate entity. We note that the entity sued in *Simonian* (UCCSN) was appointed at the state level to oversee in a statewide system of colleges and universities (*id.* at 1061), while the defendant in this case is a locally elected board that oversees four community colleges. This alone is a significant distinction. On the other hand, the defendant, like UCCSN, is subject to state oversight (see 110 ILCS 805/3-16, 3-22, 3-22.1 (West 2014)), and, as noted previously, it does receive state funding in the form of grants. Because the *Simonian* court was able to rely on prior federal court cases finding UCCSN to be a state entity under the arm-of-the-state test, the court did not need to discuss the application of that test to the facts before it. Because we do not have that benefit in this case, we must turn to federal court cases for further guidance.

¶ 45 In determining whether an entity is an "arm of the state," as opposed to an independent or local entity, federal courts examine "the relationship between the State and the entity in question." *Regents of the University of California v. Doe*, 519 U.S. 425, 429-30 (1997); see also *Benning v. Board of Regents of Regency Universities*, 928 F.2d 775, 777 (7th Cir. 1991). They also look to the nature of the entity itself. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977). The inquiry is a fact-intensive one (*Benning*, 928 F.2d at 777) that requires courts to look at "substance rather than form" (*Kashani v. Purdue University*, 813 F.2d 843, 847 (7th Cir. 1987)).

¶ 46 We note that although some federal circuit courts of appeal have developed arm-of-the-state tests with sets of specified factors (see, *e.g.*, *United States ex rel. Oberg v Pennsylvania Higher Education Assistance Agency*, 804 F.3d 646, 650-51 (4th Cir. 2015); *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005)), the Seventh Circuit has not done so. Nevertheless, we can glean

from its holdings and those of other federal courts certain considerations that are pertinent to the determination.

¶ 47   The most important consideration is whether the entity is financially dependent on the state such that any judgment against it would be paid from the state treasury. See *Doe*, 519 U.S. at 430; *Benning*, 928 F.2d at 777; *Kashani*, 813 F.2d at 845; see also *Lansing Community College v. National Union Fire Insurance Co.*, 681 F. Supp. 2d 868, 869 (W.D. Mich. 2010). Other relevant factors include whether the entity is responsible for functions of primarily statewide concern or primarily local concern (see *Hess*, 513 U.S. at 45; *Kashani*, 813 F.2d at 847; *Lansing Community College*, 681 F. Supp. 2d at 873-74), whether the entity can sue and be sued in its own name (*Benning*, 928 F.2d at 777), how the entity is characterized under state law (*Hess*, 513 U.S. at 44-45; *Oberg*, 804 F.3d at 675; *Kashani*, 813 F.2d at 846-47; *Lansing Community College*, 681 F. Supp. 2d at 872), and how much autonomy the entity exercises (*Oberg*, 804 F.3d at 668; *Kashani*, 813 F.2d at 847).

¶ 48   In this case, the relevant statutes and the allegations in the relator's complaint indicate that the defendant is largely financially independent from the State of Illinois. Although it receives significant funds from state grants, more than half of its funding comes from tuition, fees, and local taxes. Significantly, the defendant has the authority to ask residents of the district to vote to enact taxes for its funding. See 110 ILCS 805/3-14, 3-14.2, 3-14.3 (West 2014). Federal courts have found that the authority to levy taxes is a factor that weighs heavily in favor of a finding that an entity is financially independent of the state. See, *e.g.*, *Doyle*, 429 U.S. at 280 (noting the "extensive powers" of local school boards to levy taxes and issue bonds before concluding that the school boards are local entities); *Kashani*, 813 F.2d at 846 (explaining that the "absence of the power to tax is a strong indication that an entity is more like an arm of the state" than a local entity because it "ensures ultimate fiscal reliance upon the state"). Most importantly, there is no indication that any recovery in an action against the defendant would be

paid from the state treasury. This weighs in favor of a finding that the defendant is an independent local entity rather than an arm of the state.

¶ 49 We next consider whether the defendant is responsible for performing primarily state or local functions. Higher education is an important state concern. See *Oberg*, 804 F.3d at 674. However, the defendant is one of many community college districts throughout the state. See *Doyle*, 429 U.S. at 280. The defendant primarily serves students residing within the district. Thus, it performs primarily local functions. This weighs in favor of a finding that the defendant is an independent local entity rather than an arm of the state.

¶ 50 As noted earlier, the defendant can sue and be sued in its own name. See 110 ILCS 805/3-11 (West 2014). This, too, weighs in favor of a finding that the defendant is an independent entity.

¶ 51 The next consideration we address is how the defendant is characterized under state law. The defendant is subject to the requirements of the Local Government Prompt Payment Act (50 ILCS 505/1 *et seq.* (West 2014)). 110 ILCS 805/3-27.3 (West 2014). This indicates that the legislature considers it to be a local governmental entity. As we discussed previously, the defendant's enabling legislation characterizes it as a "body politic and corporate." *Id.* § 3-11. This language typically denotes an independent or local entity, not an arm of the state. See *Hess*, 513 U.S. at 44-45. Thus, the defendant is treated as a separate entity rather than an arm of the state for most purposes.

¶ 52 On the other hand, as we have also discussed, community college districts like the defendant are included within the False Claims Act's definition of the "State." 740 ILCS 175/2(a) (West 2014). As we explained earlier, inclusion in this very broad definition does not mean that a primarily local entity like the defendant and the State of Illinois are somehow one and the same. However, we also cannot overlook the fact that by placing local entities like the defendant in this definition, the legislature intended to allow such entities to step into the shoes

of the State of Illinois in actions seeking redress for fraudulent claims against them. Because we do not believe the legislature intended to allow entities like the defendant to step into the shoes of the State of Illinois in actions in which they are alleged to have made fraudulent claims, and because the defendant is treated as an independent local entity for all other purposes, we find that this factor also weighs in favor of a finding that the defendant is an independent entity rather than an arm of the state.

¶ 53    Finally, we consider how much autonomy the defendant exercises. Here, the defendant is subject to a certain degree of oversight from the Illinois Community College Board (State Board). For example, it is required to maintain records in accordance with requirements of the State Board. 110 ILCS 805/3-22 (West 2014). It must also undergo annual audits and file copies of the audit reports with the State Board. *Id.* § 3-22.1. Although the defendant has the authority to determine its own academic terms, it must obtain the consent of the State Board. *Id.* § 3-16.

¶ 54    However, the question is not "whether the entity is subject to any amount of state regulation at all"; rather, the question is "whether the entity functions independently of the state *despite* the state regulation to which it is subject." (Emphasis in original.) *Oberg*, 804 F.3d at 672-73. As noted earlier, the defendant's board of trustees is locally elected. See 110 ILCS 805/3-5, 3-6, 3-7 (West 2014). That board has broad authority to promulgate and enforce all rules necessary to manage and govern the colleges within the district. *Id.* § 3-25. The defendant is responsible for determining its own budget. *Id.* § 3-20.1. It has the authority to enter into contracts (*id.* § 3-27.1) and purchase property (*id.* § 3-36). It also has the authority to establish tenure policies for its instructors (*id.* § 3-32) and policies for the admission of students (*id.* §§ 3-17, 3-28). The defendant thus exercises a considerable degree of autonomy, which weighs heavily in favor of a finding that it is an independent entity rather than an arm of the state. Because all of these factors weigh in favor of such a finding, we conclude that the defendant is an independent entity and not an arm of the state.

¶ 55   To sum up, we hold that any entity included in the False Claims Act's broad definition of the "State" may be a "person" liable to another such entity unless the two entities are so closely intertwined that they are, in essence, a single entity. Where, as here, the real plaintiff is the State of Illinois, the defendant entity is a "person" that may be liable unless that entity is an arm of the state. We note that we do not address in this appeal what analysis might be appropriate in cases where the real plaintiff is an entity other than the State of Illinois. Because the defendant in this case is not an arm of the state, we conclude that it is a "person" subject to potential liability to the State of Illinois under the False Claims Act.

¶ 56                                    III. CONCLUSION

¶ 57   For the reasons stated, we answer the certified question in the affirmative, and we affirm the ruling of the trial court.

¶ 58   Affirmed; certified question answered.

2019 IL App (5th) 180333

NO. 5-18-0333

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| THE STATE OF ILLINOIS *ex rel.* PHILLIP E. EDMONDSON, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
|---|---|---|
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CH-198 |
| BOARD OF TRUSTEES OF ILLINOIS EASTERN COMMUNITY COLLEGES, | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) ) | Stephen P. McGlynn, Judge, presiding. |

_____

**Opinion Filed:**     August 14, 2019

_____

**Justices:**      Honorable Melissa A. Chapman, J.

Honorable Judy L. Cates, J., and
Honorable John B. Barberis Jr., J.
Concur

_____

**Attorneys
for
Appellant**

Mary Clare G. Bonaccorsi, Britton L. St. Onge, Polsinelli P.C., 150 North Riverside Plaza, Suite 3000, Chicago, IL 60606-1599; Noam B. Fischman, Polsinelli P.C., 1401 Eye Street NW, Suite 800, Washington, DC 20005

_____

**Attorney
for
Appellee**

David B. Helms, German May PC, 8000 Maryland Avenue, Suite 1060, Clayton, MO 63105

_____